NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-10398

COMMONWEALTH vs. MICHAEL JACKSON.


Suffolk.     January 9, 2015. - April 16, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, & Duffly, JJ.


Homicide.  Firearms.  Jury and Jurors.  Practice, Criminal,
     Instructions to jury, Empanelment of jury, Public trial,
     Failure to object, Waiver, Capital case.  Jury and Jurors.
     Duress.  Constitutional Law, Jury, Public trial, Waiver of
     constitutional rights.  Waiver.



     Indictments found and returned in the Superior Court
Department on March 27, 2002.

     The cases were tried before Patrick F. Brady, J., and a
motion for a new trial, filed on March 18, 2010, was heard by
him.


     Emanuel Howard for the defendant.
     Helle Sachse, Assistant District Attorney, for the
Commonwealth.
     Afton M. Templin, for Committee for Public Counsel
Services, amicus curiae, submitted a brief.


     CORDY, J.  After a jury trial, the defendant, Michael

Jackson, was convicted of murdering Jose Lane, the unlawful

possession of a firearm, and the unlawful possession of ammunition.  At trial, the defendant had requested that the judge instruct the jury that duress was an available defense to intentional murder, which the judge declined to do.  Prior to sentencing, the defendant orally moved for a new trial and for a mistrial when it was learned that one of the jurors was not a United States citizen.  Both motions were denied.  On March 16, 2006, the judge imposed a mandatory sentence of life in State prison on the defendant's conviction of murder in the first degree, a concurrent sentence of four and one-half years in State prison for the unlawful possession of a firearm, and a concurrent sentence of one year in a house of correction for the unlawful possession of ammunition.

On March 22, 2010, the defendant filed a motion for a new trial under Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), on three grounds, the first two of which were rejected without a hearing on December 2, 2010,[1] and the third denied on May 3, 2011, after an evidentiary hearing.[2]  The denial of this motion was consolidated with the defendant's direct appeal.

---

[1] The defendant claimed error in the inclusion of a noncitizen on the jury and challenged the constitutionality of a sentence of life imprisonment for a person under the age of eighteen.

[2] The defendant claimed violation of his right to a public trial pursuant to the Sixth Amendment to the United States Constitution because three family members and supporters were

In his appeal, the defendant contends that the judge erred in denying his request to instruct the jury on duress, that the inclusion of a noncitizen juror on the jury constituted structural error requiring a new trial, and that his right to a public trial pursuant to the Sixth Amendment to the United States Constitution was violated when his fiancée, sister, and step-grandmother were asked to leave the court room during a portion of the empanelment process. For the reasons stated below, we find no reversible error, and discern no basis to exercise our authority under G. L. c. 278, § 33E, to reduce or set aside the verdict of murder in the first degree. Therefore, we affirm the defendant's convictions.

1. Background. We recite the facts in the light most favorable to the Commonwealth, while reserving certain details for discussion in conjunction with the issues raised.

a. The killing. At approximately 10:30 P.M. on January 24, 2002, Samuel Dew was standing on the sidewalk near the steps leading up to the front porch of the home of the victim's sister in the Dorchester section of Boston.[3] The victim was standing on the first landing leading to the porch, sharing a cigar with

---

apparently asked by a court officer to leave the court room when the jury venire (consisting of seventy-nine jurors) were brought in for empanelment.

[3] The victim stayed at his sister's home four or five days each week.

Dew, who noticed a person walking on the street toward them. When the person was about an arm's length away, Dew recognized him as the defendant, Michael Jackson,[4] someone he had met a dozen or so times in the course of Dew's work at the Dorchester Reporting Center, a Department of Youth Services facility. The three exchanged pleasantries, and afterward, the defendant turned as if to walk away. The defendant then reached behind his back, brought out what Dew described as a shiny metal object, and pointed it at the victim. When Dew realized the object was a gun, he turned and ran away from the house. He last saw the victim turning and running up the stairs toward the porch. He heard gunshots go off behind him. Boston police and emergency medical technicians soon arrived and took the victim to the Boston Medical Center, where he died five minutes after arrival.

The next day, Dew learned that the police wanted to speak to him. He called and arranged to meet with them at police headquarters. On arrival, investigators asked him to look at a series of eight photographs, including a photograph of Michael Jackson. Dew picked out the defendant's photograph and said he was "a hundred percent" that the person depicted was the shooter whom he knew by the name of "Mike D."

---

[4] Dew knew the defendant by his nickname, "Mike D."

That same day, Boston police Sergeant Greg Long, based on information the police had received, set up surveillance in front of another address in Dorchester.  At approximately 6:15 P.M., Sergeant Long and fellow officers began following a black GMC Yukon sport utility vehicle that left that location. They stopped the vehicle and removed the defendant from the back seat, arrested and handcuffed him, and brought him to the homicide unit at the Boston police headquarters.  The defendant was seventeen years of age.

Officer Paul McLaughlin, who conducted the defendant's interrogation, read the defendant the Miranda warnings and obtained a signed Miranda waiver before speaking to him for an unrecorded period of time.  One hour and forty minutes later, the defendant agreed to give a recorded statement.[5]  During the statement, the defendant admitted to shooting the victim and related events that had occurred the day before the shooting

---

[5] This statement was the subject of a pretrial motion to suppress.  After an evidentiary hearing, that motion was denied by a judge other than the trial judge.  The voluntariness of the statement was an issue subsequently raised and extensively litigated at the trial.  Dr. Paul Zeizel, a clinical psychologist, was called by the defendant and testified about his examination of the defendant and his opinion with regard to the defendant's susceptibility to being influenced by persons in authority like the police.  A humane practice instruction was given to the jury by the trial judge.  Although not raised as an issue on appeal, we have reviewed the denial of the motion to suppress and the manner in which the voluntariness issue was handled at trial, and we find no error.

when he and a friend, Riccardo Green, were at a cemetery. Green informed the defendant that there were people who thought the defendant was "ratting"[6] to the police, and the only way to avoid "catch[ing] consequences" associated with being a rat was for the defendant to kill the victim, who Green claimed had killed another individual, Rasheed Fountain, several years before.[7]

b. Public trial. On the day of jury empanelment, the defendant's fiancée, sister, and step-grandmother were in the court room. Before the venire were brought in, a court officer asked the three individuals to leave the court room. They followed the officer's orders and were not present in the court room during the empanelment process. There was no objection.

An evidentiary hearing was held on the claim in the defendant's second motion for a new trial of an alleged violation of his Sixth Amendment right to a public trial. At the conclusion of the hearing, the judge issued a written memorandum of decision finding that the number of jurors in the venire exceeded the seating capacity of the court room. He concluded that the brief closure of the court room was de minimis so as to not equate to a closure in the constitutional

---

[6] The defendant had testified during a grand jury proceeding implicating a gang member in an unrelated murder.

[7] The defendant described Rasheed Fountain as a father figure to him. Seven years prior to the facts that give rise to this case, the defendant witnessed Rasheed Fountain's murder, allegedly at the hands of the victim in the present case.

sense and that, even if it had not been de minimis, the facts concerning the empanelment satisfied the criteria of Waller v. Georgia, 467 U.S. 39 (1984).

c. Makeup of the jury. On March 7, 2006, the day following the jury's verdicts but before sentencing, the judge informed counsel that he believed one of the jurors was not a United States citizen.[8] The judge conducted a hearing on March 14, 2006, during which the juror told the court that he was not a United States citizen. Defense counsel orally moved for a mistrial and for a new trial; both motions were denied.

2. Discussion. "When this court reviews a defendant's appeal from the denial of a motion for a new trial in conjunction with his direct appeal from an underlying conviction of murder . . . , we review both under G. L. c. 278, § 33E." Commonwealth v. Burgos, 462 Mass. 53, 59, cert. denied, 133 S. Ct. 796 (2012).

a. The defense of duress. The defendant argues that the judge erred by not instructing the jury on the defense of duress. The defendant claims that juveniles (age seventeen or younger) should be allowed to invoke duress as a defense to intentional murder, notwithstanding the fact that the defense is barred from use by adults. Commonwealth v. Vasquez, 462 Mass.

---

[8] When the judge went to thank the jury for their service, one juror asked the judge if he might be able to recommend to the juror an attorney for assistance on an immigration matter.

827, 835 (2012). Because this issue was properly raised below, we review for prejudicial error. See Commonwealth v. Graham, 62 Mass. App. Ct. 642, 651 (2004).

Discussion about the defendant's request for a duress instruction began during the Commonwealth's case. When the judge indicated that he did not believe that duress was a defense to intentional murder,[9] defense counsel made what amounted to an offer of proof as to the witnesses he might call if duress were a defense, and declared that they would testify as to the difficulties of the defendant's upbringing and circumstances. These witnesses were not called by the defendant, and, at the close of evidence, the judge definitively denied defense counsel's request for a duress instruction.

In Vasquez, 462 Mass. at 835, we concluded that duress was not an available defense to intentional murder.[10] Nonetheless, the defendant claims that it was error to foreclose the defense to a juvenile offender because of the fundamental differences between adults and juveniles. In Vasquez, we had no need to specify our holding as foreclosing duress as a defense to

_____

[9] The judge was also the trial judge in Commonwealth v. Vasquez, 462 Mass. 827 (2012).

[10] In coming to this conclusion, we noted that duress is not an available defense to intentional murder under the common law of any State and "[e]very State appellate court, except one," that has addressed this application of duress has determined that it does not justify intentional murder. Vasquez, 462 Mass. at 834 & n.5.

intentional murder for both adult and juvenile offenders.  We take this opportunity to clarify that our holding does foreclose such a defense for both classes of offender.

Duress has been defined as "a present, immediate and impending threat of such a nature as to induce a well-founded fear of death or of serious bodily injury if the criminal act is not done," with no reasonable and available chance at escape, and where no person of reasonable firmness could have acted otherwise in the circumstances.  See Commonwealth v. Robinson, 382 Mass. 189, 199 (1981).  The defendant argues that it was error to subject juveniles to the same strictures of reasonableness as an adult.  In support of this contention, the defendant cites several recent United States Supreme Court cases that have acknowledged some inherent differences between adults and juveniles, and have altered the treatment of juveniles in certain aspects of the criminal justice system.  See Miller v. Alabama, 132 S. Ct. 2455 (2012) (life sentences for juveniles without possibility of parole); J.D.B. v. North Carolina, 131 S. Ct. 2394 (2011) (custodial interrogation); Graham v. Florida, 560 U.S. 48 (2010) (life imprisonment without possibility of parole for nonhomicide offense); Roper v. Simmons, 543 U.S. 551 (2005) (death penalty for juveniles).

Even were we to agree that the standard of reasonableness we would apply to an adult confronted with the fear of death or

serious bodily injury might be somewhat different and more forgiving for a person seventeen years of age or younger, this would not justify a duress defense for intentional murder. As we discussed in Vasquez, the rationale of such a defense is not that a defendant faced with a threat of harm loses his or her mental capacity to commit the crime, or that the defendant has not engaged in a voluntary act. "Rather, it is that, even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the law is justified because he has thereby avoided a harm of greater magnitude" (citation omitted). Vasquez, 462 Mass. at 833. We reject the "choice of evils" rationale to justify intentional murder even where the murderer is a juvenile, because in an intentional killing, the threat of harm to the juvenile claiming duress, even the threat of death, is no greater than the harm to the victim being killed.

Aside from our rejection of the defense of duress generally in cases of intentional murder, the elements of the defense were not made out in this case. There was no evidence that the threat against the defendant was "immediate" or that he could not escape or avoid the harm that he alleges was threatened. Nor does this case present such extraordinary and rare circumstances that might justify a reduction in the defendant's guilt under G. L. c. 278, § 33E. Id. at 835. Although the

defendant experienced a difficult childhood, was acquainted with individuals with gang affiliations, and alleged that he had been told he would face personal consequences if he did not execute the victim, these are not the type of rare circumstances that would warrant relief under G. L. c. 278, § 33E.

The defendant's actions are directly contrary to the purpose of and policy behind the duress defense. His choice of evils justifying the killing of a third party to spare harm to himself is no different from that of the defendant in Vasquez. The Supreme Court cases relied on by the defendant are not to the contrary. Because the judge properly applied the law, there was no error.

b. Public trial. The defendant seeks a new trial on a second theory, that his Sixth Amendment right to a public trial was violated because the court room was closed for a period of sixty to ninety minutes during jury empanelment. It is well settled that violation of the Sixth Amendment right to a public trial is considered structural error. See United States v. Marcus, 560 U.S. 258, 263 (2010); Commonwealth v. Cohen (No. 1), 456 Mass. 94, 105 (2010). However, it is possible that some closures are so limited in scope or duration that they are deemed de minimis, and thus do not implicate the Sixth Amendment. See, e.g., Peterson v. Williams, 85 F.3d 39, 44 (2d Cir.), cert. denied, 519 U.S. 878 (1996). We have held that

"the closure of a court room for the entire empanelment process [was] not de minimis," notwithstanding that it lasted only seventy-nine minutes, Commonwealth v. Morganti, 467 Mass. 96, 97, cert. denied, 135 S. Ct. 356 (2014), and that partial closures are not per se de minimis.  Cf. Cohen (No. 1), 456 Mass. at 110-111 (concluding partial closure not de minimis where voir dire was closed on three of five days and six friends and supporters of defendant were excluded).

Where a defendant timely raises and preserves a meritorious claim of structural error, this court "will presume prejudice and reversal is automatic."  Commonwealth v. LaChance, 469 Mass. 854, 857 (2014).  However, the right to a public trial, like any structural right, can be waived.  See Cohen (No. 1), 456 Mass. at 105-106; Mains v. Commonwealth, 433 Mass. 30, 33 & n.3 (2000) (deficient reasonable doubt instruction is structural error subject to waiver); Commonwealth v. Edward, 75 Mass. App. Ct. 162, 173 (2009).

The defendant did not raise an objection when the court room was closed, arguably because neither he nor his counsel was aware of the closure.  The issue also was not raised in his first motion for a new trial that preceded sentencing.  The defendant contends that his claim cannot be procedurally waived when neither counsel nor the defendant knew of the occasion for objection.  This argument is at odds with our recent decision in

Commonwealth v. Wall, 469 Mass. 652 (2014).  In that case, the defendant's uncle was prevented from entering the court room during jury empanelment.  Id. at 672.  Defense counsel did not know of the court room closure and therefore did not object. Id. at 672 n.24.  Nonetheless, we concluded that the "right to a public trial may be procedurally waived whenever a litigant fails to make a timely objection."  Id. at 672.  Cf. LaChance, 469 Mass. at 858-859 (when Sixth Amendment violation is unpreserved due to ineffective assistance of counsel and attacked on collateral grounds, defendant must show prejudice notwithstanding structural nature of claim).  As such, we conclude that the defendant procedurally waived his Sixth Amendment right to a public trial during the empanelment process.

Despite the fact that the claim is procedurally waived, we still analyze the claim pursuant to G. L. c. 278, § 33E, to determine whether a closure would subject him to a substantial likelihood of a miscarriage of justice.  The defendant has failed to advance any argument or articulate any facts that would support such a finding.[11]

_____

[11] See, e.g., Commonwealth v. Dyer, 460 Mass. 728, 737 (2011), cert. denied, 132 S. Ct. 2693 (2012) (declining to order new trial where "defendant point[ed] to no factors suggesting . . . that a substantial likelihood of a miscarriage of justice occurred"); Commonwealth v. Randolph, 438 Mass. 290, 297-298 (2002), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002)

c.  <u>Noncitizen on the jury</u>.  The requirement that jurors must be United States citizens is established statutorily by G. L. c. 234A, § 4.  However, the same chapter of the General Laws contains an explicit savings clause which states:

> "[T]he fact that a juror shall be found to be not qualified under [G. L. c. 234A, § 4] . . . shall not be sufficient to cause a mistrial or to set aside a verdict unless objection to such irregularity or defect has been made as soon as possible after its discovery or after it should have been discovered and unless the objecting party has been specially injured or prejudiced thereby."

G. L. c. 234A, § 74.

While the defendant objected on being informed by the judge that a noncitizen had been on the jury, thus satisfying the first prong of the exception to the savings clause, the defendant has not shown any prejudice.  Rather, he urges this court to consider a violation of G. L. c. 234A, § 4, to be structural error and thus as requiring no showing of prejudice. The defendant relies on <u>Vasquez</u> v. <u>Hillery</u>, 474 U.S. 254 (1986) (<u>Hillery</u>), to support this contention.  In <u>Hillery</u>, the Supreme Court affirmed the holding of the United States Court of Appeals for the Ninth Circuit that the respondent had been denied equal protection because the grand jury that indicted him were composed entirely of white jurors, despite the fact that there were qualified African-Americans available.  <u>Id</u>. at 256-257.  In

_____

(finding no "serious doubt whether the result of the trial might have been different had the error not been made"); <u>Commonwealth</u> v. <u>Horton</u>, 434 Mass. 823, 832-833 (2001).

so holding, the Supreme Court reasoned that "discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review." Id. at 263-264. Hillery is inapposite. It does not contemplate the facts that are at issue in this case. The structural error analysis involved racial discrimination in excluding minority members from the grand jury. The holding makes no reference to the inclusion of jurors deemed unqualified for jury service by State law in a petit jury. Even the cases cited by Hillery as examples of structural error do not encompass, let alone mention, the improper qualification of a juror included on a petit jury.[12] The defendant points us to no Massachusetts authority that would require us to consider this error structural, and such a position runs directly counter to the statutory language of § 74 and this court's precedent.[13]

---

[12] See, e.g., Davis v. Georgia, 429 U.S. 122 (1976) (death sentence cannot be carried out where prospective juror excluded from jury for cause for merely expressing scruples against death penalty, rather than being irrevocably committed to vote against it); Sheppard v. Maxwell, 384 U.S. 333, 363 (1966) (reversing denial of habeas relief when trial judge failed to protect defendant from inherently prejudicial publicity); Tumey v. Ohio, 273 U.S. 510, 535 (1927) (reversal required when judge has financial interest in conviction, despite lack of indication that bias influenced decisions).

[13] See, e.g., Commonwealth v. Sires, 370 Mass. 541, 545-546 (1976) (defendant not entitled to new trial where one juror discovered to be distantly related to victim and defendant, because defendant failed to show prejudice); Commonwealth v. Delle Chiaie, 323 Mass. 615, 618-619 (1949), quoting

The present case bears striking resemblance to the case of Kohl v. Lehlback, 160 U.S. 293 (1895), in which the Supreme Court determined that the inclusion of a juror who was not a citizen of the United States was a defect, but was not "an infraction of the Constitution of the United States." Id. at 300. The Supreme Court surmised that if the defendant were to show prejudice then he may be entitled to a new trial, but the mere inclusion of the noncitizen juror did not "den[y] due process of law." Id. at 303. We glean no language in the Massachusetts Declaration of Rights that would require a conclusion different from that reached under the Federal Constitution.

The defendant does not address how he was prejudiced by a noncitizen juror deciding his case, and in the absence of prejudice, the ordering of a new trial is unwarranted under G. L. c. 234A, § 74.

d. G. L. c. 278, § 33E. We have reviewed the record in accordance with G. L. c. 278, § 33E, to determine whether any

_____

Commonwealth v. Wong Chung, 186 Mass. 231, 237-238 (1904) ("If . . . it is discovered after a verdict that a disqualified person has joined in the decision, the interests of justice require that the irregularity or accident shall be treated like other irregularities. . . . If in the opinion of the presiding judge, the disqualification of a juror has operated injuriously, and has tended to the return of an erroneous verdict, or has otherwise worked injustice, a new trial should be granted"); Wong Chung, supra (defendant not entitled to new trial where discovered that one juror may have been stripped of citizenship rights).

basis exists to set aside or reduce the verdict of murder in the first degree or to order a new trial.  In that review we discerned nothing in the defendant's conviction that suggests such would be appropriate.  Accordingly, we decline to exercise our authority.

<u>Judgments affirmed</u>.

<u>Order denying motion for a new trial affirmed</u>.