NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-482                                      Appeals Court

COMMONWEALTH  vs.  ANTONIO BERARDI.

No. 14-P-482.

Essex.      February 3, 2015. - October 9, 2015.

Present:  Kafker, Wolohojian, & Sullivan, JJ.


Sex Offender.  Sex Offender Registration and Community
    Notification Act.  Practice, Criminal, Bifurcated trial,
    Empanelment of jury, Trial jury-waived, Assistance of
    counsel.  Jury and Jurors.  Constitutional Law, Jury, Trial
    jury-waived, Assistance of counsel.  Due Process of Law,
    Assistance of counsel.



    Indictment found and returned in the Superior Court
Department on April 11, 2008.

    The case was tried before Garry V. Inge, J.; the subsequent
offense portion of the indictment was heard by Richard E. Welch,
III, J., and a motion for a new trial was considered by him.


    Elizabeth Dembitzer for the defendant.
    Quentin Weld, Assistant District Attorney, for the
Commonwealth.


    WOLOHOJIAN, J.  The defendant, a registered sex offender,

was indicted for knowingly providing false information on a

registration form, in violation of G. L. c. 6, § 178H(a), by

failing to disclose that he was employed.  He was charged as a subsequent offender and, as a result, faced imprisonment "for not less than five years."  G. L. c. 6, § 178H(a)(2), as appearing in St. 1999, c. 74, § 2.  In a bifurcated proceeding, a Superior Court jury convicted him of the underlying registration violation, after which he was convicted of the second and subsequent offense in a jury-waived trial.  We consolidated his direct appeal with his appeal from the denial of his motion for new trial.

We agree with the defendant that, where thirteen jurors were seated, he was entitled, under Mass.R.Crim.P. 20(c)(1), 378 Mass. 890 (1979), to thirteen peremptory challenges because he was charged with a "crime punishable by imprisonment for life," and that it was error to allot him only five such challenges.  We conclude with respect to his direct appeal, however, that the defendant has failed to show that the error resulted in any injury or deprived him of a fair and impartial jury.  For similar reasons, although we conclude that, accepting as true the affidavits submitted with the defendant's motion for new trial, he has satisfied the first prong of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), he has not satisfied the second.  Accordingly, we affirm his conviction and the denial of his motion for new trial.

Background.  The defendant was indicted for providing false information, second or subsequent offense, in violation of his reporting obligations as a registered sex offender.  More specifically, he was charged with falsely reporting that he was unemployed.[1]  A first trial ended in a mistrial when one of the jurors, upon being polled after the verdict, stated that the defendant was not guilty.

At the second trial, the judge allotted to each side five peremptory challenges for a jury of thirteen (twelve plus one alternate).[2]  The defendant did not object.  The judge then conducted voir dire in two stages.  First, he questioned the venire as a whole.  Next, the jurors were individually questioned at sidebar.  Depending on a particular juror's responses, the judge then either excused the juror or found the juror indifferent.  If the latter, the parties were asked whether they wished to challenge that juror.

As a result of this process, the judge excused nine potential jurors on his own initiative.  Nine additional jurors

---

[1] The defendant was employed at a debt collection agency. His first day of employment was the same day he completed the registration form at issue.  He had been offered the job either that morning, or the day before.  In any event, the defendant contended that he did not know he was, or consider himself to be, in fact employed on that first day, which consisted of training.

[2] The defendant had been allotted six peremptory challenges for the first trial.

were excused at the parties' request:  five jurors were excused by the defendant's exercise (through counsel) of his peremptory challenges, and the Commonwealth peremptorily challenged four others.  Defense counsel challenged no jurors for cause.[3]  Nor did he request additional questioning of any juror.

The defendant's last peremptory challenge was used to eliminate Juror 42 for the thirteenth seat.  Juror 43 filled that final seat without challenge from either side.  Juror 43 had not raised her hand in response to any of the questions posed to the venire as a whole.  Nor did the individual questioning at sidebar reveal her to be anything other than indifferent.[4]  Indeed, the defendant does not contend the judge erred in finding Juror 43 indifferent.  Both the prosecutor and

---

[3] The Commonwealth made one challenge for cause, which was denied.

[4] The judge found Juror 43 indifferent after the following exchange at sidebar:

The judge:  "I just have a couple of questions to ask you, given the nature of this case.  First, have you or any member of your family ever been either accused of or been the victim or -- either one -- any type of sexual assault, whether or not reported to law enforcement?"

A.:  "No."

Q.:  "Second question -- do you know anyone who has been or currently is required to register as a sex offender?"

A.:  "No."

defense counsel indicated they were content with Juror 43 and with each of the other seated jurors.

As we have noted, the trial was bifurcated.  The only issue during the first phase of the trial was whether the defendant's statement that he was unemployed was false.  The defendant stipulated to the remaining elements of the crime.[5]  The jury-waived second phase was limited to determining whether the defendant had previously been convicted of failing to register as required.  After the conclusion of phase two, the defendant was sentenced to State prison for five years to five years and a day, and to community parole supervision for life.

The defendant raised no issue about the number of peremptory challenges until his motion for new trial, filed some two and one-half years after the verdict, when he argued that he was entitled to thirteen such challenges.  The motion judge (who had been the judge at the second trial) denied the motion

---

[5] The judge read the following stipulation to the jury:

"First, that the defendant . . . is the same Antonio Berardi who, in 1995, was adjudicated a delinquent juvenile by reason of the offense of rape of a child.  Second, that, by such adjudication, Antonio Berardi was required, under the laws of Massachusetts, to register as a sex offender whenever he moved into a location.  And, three, that the defendant, Antonio Berardi, knew he was obligated to register by providing true information to the Sex Offender Registry Board or a representative of the Sex Offender Registry Board regarding his employment status.  He knew he had to give true information regarding his employment status."

without a hearing, reasoning that the defendant was entitled to only five peremptory challenges for the first phase of the trial and that it was immaterial whether the defendant was entitled to thirteen peremptory challenges for the second phase, because he had waived his right to trial by jury.

Discussion. Peremptory challenges. 1. Direct appeal. Rule 20(c)(1) of the Massachusetts Rules of Criminal Procedure provides:

> "Upon the trial of an indictment for a crime punishable by imprisonment for life, each defendant shall be entitled to twelve peremptory challenges of the jurors called to try the case[.] . . . Each defendant in a trial of [such a crime] in which additional jurors are impaneled . . . shall be entitled to one additional peremptory challenge for each additional juror."

Our initial focus is on the phrase "trial of an indictment for a crime punishable by imprisonment for life," with respect to which we must answer two questions. First, we must consider whether the crime with which the defendant was charged is punishable by life imprisonment. Second, we must assess whether "trial" means the whole trial, or only the second (subsequent offender) phase of the trial, which is the phase that carries the potential for life imprisonment.[6]

---

[6] A first conviction carries a potential sentence of six months to two and one-half years in the house of correction or not more than five years in State prison. G. L. c. 6, § 178H(a)(1).

The statutory penalty for violating G. L. c. 6, § 178H(a)(2), by committing a second and subsequent offense of providing false information as a registered sex offender, is imprisonment "for not less than five years."  No maximum penalty is specified.  Hence, as the Commonwealth acknowledges, the statute is presumed to carry a life term.  Commonwealth v. Logan, 367 Mass. 655, 657 (1975).  Accordingly, the defendant was entitled to the benefit of rule 20 and, because the judge empanelled a jury of twelve plus one alternate, the defendant should have been allotted thirteen peremptory challenges.[7]

Although bifurcation of the trial was required by G. L. c. 278, § 11A, inserted by St. 1967, c. 213 (as it is in other cases charging a second and subsequent offense),[8] that fact makes

---

[7] Instead he received five, which would have been the correct number had the defendant not faced a potential maximum penalty of life in prison.  The judge apparently did not realize at the time of empanelment that, as a subsequent offender, the defendant faced a potential life sentence, and neither party brought this important information to the judge's attention.

[8] We believe that this is the first appellate case to state that G. L. c. 278, § 11A, applies to second and subsequent offenses under G. L. c. 6, § 178H(a)(2).  We see no reason to think § 11A would not apply to § 178H offenses both because § 11A has been applied across a variety of contexts, regardless of the substantive nature of the underlying offense, see, e.g., Commonwealth v. Thompson, 427 Mass. 729 (1998) (unarmed robbery); Commonwealth v. Pelletier, 449 Mass. 392 (2007) (operating a motor vehicle while under the influence); Commonwealth v. Kulesa, 455 Mass. 447 (2009) (criminal harassment); Commonwealth v. Eberhart, 461 Mass. 809 (2012) (armed career criminal statute), and because the purpose of § 11A is to ensure that proof of the substantive offense will

no difference for purposes of rule 20(c)(1). Rule 20 does not operate differently in bifurcated trials nor does it apply only to the subsequent offender phase of a bifurcated trial. The subsequent offender phase is not a separate trial nor does it entail proof of a separate crime. Repeat offender statutes "do not identify freestanding crimes, but concern 'solely the sentence of a person convicted of a [current] violation . . . who has previously been convicted of at least one similar . . . offense. The prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted [of the current offense] and the prior offense is proved'" beyond a reasonable doubt. Commonwealth v. Miranda, 441 Mass. 783, 788 (2004), quoting from Bynum v. Commonwealth, 429 Mass. 705, 708-709 (1999). Commonwealth v. Richardson, 469 Mass. 248, 252 (2014). See Commonwealth v. Bowden, 447 Mass. 593, 601 n.11 (2006) ("[p]rior convictions must be proved beyond a reasonable doubt . . . even though a prior conviction is not formally an element of the crime").

It is true that G. L. c. 278, § 11A, allows a defendant to waive his right to a jury for either, neither, or both phases of a bifurcated trial, and that the election may be made with

not be prejudicially infected by evidence that it is a subsequent offense.

respect to the second phase after the first phase of the trial has been completed. Commonwealth v. Thompson, 427 Mass. 729, 737-738 (1998). It is also true that the defendant would not be exposed to a life sentence if the Commonwealth succeeded only in proving the substantive crime, while failing to prove that it was a second and subsequent offense. However, it does not follow that rule 20 applies only to the second phase of the trial. To conclude otherwise would be unworkable as a practical matter because the same jury will usually hear both phases of a bifurcated trial.

Indeed, the judge intended to use the same jury for the second phase of the trial at issue here, and he so informed the defendant during the jury-waiver colloquy. It was within the judge's discretion to decide whether the same jury would consider both phases of the bifurcated trial or whether a new jury would be empanelled for the second phase, see G. L. c. 278, § 11A; Commonwealth v. Pelletier, 449 Mass. 392, 396 (2007), and neither party contends that the judge abused his discretion here. Clearly, if a new jury is to hear the second phase, the members of that second jury must be empanelled in the same manner as any other jury, see G. L. c. 278, § 11A (second phase of the trial is "subject to all of the provisions of law governing criminal trials"), including allowing the full number of peremptory challenges required by rule 20. However, where

(as here) the same jury is to be used for both phases, absent some reason to think the jury will not be fair and impartial for the second phase, neither our cases nor § 11A appears to require that additional voir dire be conducted before the second phase. See, e.g., Commonwealth v. Thompson, 427 Mass. at 736-737; Commonwealth v. Means, 71 Mass. App. Ct. 788, 797-798 (2008), reversed on other grounds, 454 Mass. 81 (2009). In other words, the full number of peremptory challenges required by rule 20 must be allotted ab initio because, in the ordinary course, there will be no additional voir dire before the second phase.

In sum, it was error to allow the defendant only five peremptory challenges rather than thirteen. The defendant argues that a deprivation of this magnitude is a form of structural error requiring reversal without a showing of prejudice. For the reasons that follow, we disagree.

"Although the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution guarantee the right to be tried by an impartial jury, there is no Federal or State constitutional right to exercise peremptory challenges." Commonwealth v. Mello, 420 Mass. 375, 396 (1995). Commonwealth v. Bockman, 442 Mass. 757, 762 (2004). "Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory

challenges allowed and to define their purpose and the manner of their exercise."[9],[10]  Ross v. Oklahoma, 487 U.S. 81, 89 (1988) (citations omitted).  The mistaken denial of peremptory challenges is not per se structural error under the Federal Constitution.  Rivera v. Illinois, 556 U.S. 148, 158 (2009). Nor have we held that it is structural error under art. 12. Indeed, to the contrary, as explained further below, we require a showing of prejudice or injury resulting from the erroneous reduction in the number of peremptory challenges, except where the error is preserved.

Even though the error is not structural per se, it can nonetheless result in reversal either where the defendant is deprived of his constitutional right to an impartial jury or he

---

[9] "When States provide peremptory challenges (as all do in some form), they confer a benefit 'beyond the minimum requirements of fair [jury] selection,' Frazier v. United States, 335 U.S. 497, 506 (1948), and thus retain discretion to design and implement their own systems."  Rivera v. Illinois, 556 U.S. 148, 157-158 (2009).

[10] Our Supreme Judicial Court has stated that "[t]he purpose of the properly exercised peremptory challenge is to aid the constitutional right to a fair and impartial jury." Commonwealth v. Wood, 389 Mass. 552, 560 (1983).  "[Peremptory challenges] are afforded to a defendant to enable him to eliminate from the jury that will decide his case jurors whom he perceives to be prejudiced against him or who may be 'harboring subtle biases with regard to the case, which were not elicited on voir dire or which do not establish legal cause for challenge.'"  Commonwealth v. Bockman, 442 Mass. at 762, quoting from Commonwealth v. Soares, 377 Mass. 461, 483-484, cert. denied, 444 U.S. 881 (1979).

"does not receive that which state law provides." Ross v. Oklahoma, 487 U.S. at 89. The defendant has not shown either. He does not challenge the judge's determination that each seated juror was indifferent. He challenged no juror for cause, including (perhaps most importantly) the last juror, who was seated after the defendant had used all his peremptory challenges. Nor does he contend that his lawyer should have challenged any particular juror for cause. Although the defendant's affidavit submitted in connection with his motion for new trial states that he "did not want the last juror who was seated on my jury to be on my jury," it does not state why. This is not, therefore, a situation where the defendant was forced to accept a juror who could or should have been challenged for cause. Nor has the defendant otherwise shown that he was deprived of his constitutional right to a fair and impartial jury.

Turning to what "state law provides," the analysis is slightly different, but the defendant fares no better. "No irregularity in . . . [the] impanelling of jurors shall be sufficient to set aside a verdict, unless the objecting party has been injured thereby or unless the objection was made before the verdict" (emphasis added). G. L. c. 234, § 32. See Commonwealth v. Montecalvo, 367 Mass. 46, 51 (1975) (irregularity in empanelment insufficient to reverse conviction

unless defendant is harmed by it).  No prejudice need be shown if the defendant timely objects before the verdict or if the defendant's "exercise of a peremptory challenge is erroneously denied and the challenged juror is seated on the panel and participates in deciding the case" (emphasis added).  Commonwealth v. Bockman, 442 Mass. at 763.  See Commonwealth v. Smith, 461 Mass. 438, 443 (2012).  Here, no objection was made before the verdict, and no juror was seated over an exercised challenge.  At no time did the defendant object to the reduced number of peremptory challenges or ask for additional ones.  Nor did he preserve his rights by challenging the last juror for cause.  See Commonwealth v. McCoy, 456 Mass. 838, 842 (2010) (question of the impartiality of a juror is waived if no challenge for cause).  Therefore, the verdict need not be set aside unless the defendant can show injury.

The defendant has not shown injury in the sense our cases have required.  Nor has he shown that his failure to object to the number of peremptory challenges resulted in a substantial risk of a miscarriage of justice.  See Commonwealth v. Beldotti, 409 Mass. 553, 560-561 (1991) (applying miscarriage of justice analysis to unpreserved assertion of error in empanelling jury).  As discussed above, the defendant has not shown that he failed to receive a fair and impartial jury.  He has not satisfied the test articulated in Commonwealth v. McCoy, supra ("prejudice

generally is shown by the use of a peremptory challenge to remove the juror who allegedly should have been excused for cause together with evidence that the defendant later was forced to accept a juror he would have challenged peremptorily but was unable to because his peremptory challenges had been exhausted").  See Commonwealth v. Clark, 446 Mass. 620, 629 (2006); Commonwealth v. Somers, 44 Mass. App. Ct. 920, 922 (1998).  Nor is this a situation where the judge's exclusion of a particular class of persons from the venire resulted in making one side's peremptory challenges relatively more valuable.  See Commonwealth v. McKay, 363 Mass. 220, 223 (1973) (no general disqualification of a class of people from the jury, therefore defendant not deprived of fair jury).  Contrast Searle v. Roman Catholic Bishop of Springfield, 203 Mass. 493, 500 (1909) (order excluding Roman Catholics from jury made one party's peremptories impermissibly more valuable).

In short, although depriving the defendant of eight peremptory challenges was a serious error, it was not preserved, it was not structural, he has not shown that he was deprived of a fair and impartial jury, and he has not shown any of the other types of injury our cases have recognized or a substantial risk of a miscarriage of justice.  We conclude, therefore, that we

cannot set aside the verdict on direct appeal despite the magnitude of the error.[11]

2. Motion for new trial; ineffective assistance of counsel. As noted above, the judge denied the motion for new trial without conducting a hearing, erroneously reasoning that the defendant was not entitled to the full complement of peremptories until the second phase of the trial. Deciding as he did, the judge did not address the averments of the affidavits submitted with the motion. We begin our analysis by setting them out here.

Trial counsel's affidavit stated that he did not know that his client was entitled to at least twelve peremptory challenges, and that he believed five peremptories was the maximum number allowed. He did not explain on what basis this belief rested, but it is a fair inference from the trial

---

[11] Also in his direct appeal, the defendant argues that counsel's failure to object to multiple references to his underlying offense created a substantial risk of a miscarriage of justice where the offense had been stipulated to. It was permissible to read the stipulation to the jury. As read, it informed the jury that the defendant had been "adjudicated a delinquent juvenile by reason of the offense of rape of a child." As to the other references, even were we to assume error, we discern no substantial risk of prejudice. The additional references to "rape of a child" during trial were sparse, and were sometimes elicited by defense counsel in an apparent effort to diffuse the impact of the underlying offense and to keep the jury focused on the limited question of the defendant's failure to properly register. Moreover, the prosecutor made no reference to the underlying offense in closing.

transcript that neither the parties nor the judge realized until sentencing that the offense was a felony punishable by imprisonment for life. In any event, counsel acknowledged that he failed to object to receiving only five peremptories and that he did not request any additional challenges. Finally, counsel averred that if he had "believed [he] was entitled to 12 or more peremptory challenges [he] would have used more peremptory challenges during jury selection." He does not, however, give any further detail and, significantly, he does not state that he would have exercised a peremptory challenge with respect to Juror 43.

The defendant's affidavit states that he consulted with trial counsel throughout jury selection, read the completed jury questionnaires with his counsel, looked at the venire, and reached his own conclusions as to whom he would like to have on his jury and whom he would like to exclude. The defendant states that he conferred with his attorney after each potential juror was questioned at sidebar and that they discussed "whether we would want to have this person as a juror based on their answers, their attitude, the way they looked at me, their answers on the questionnaire, or just the way I felt about them." Further, the defendant averred:

> "10. There were some potential jurors that I did not want on the jury for my trial. There were some potential jurors that I felt would be biased against me even though that did

not explicitly come out during the judge's questioning. However, we did not use peremptory challenges on some of these individuals because we believed we were limited to five challenges and there were other potential jurors that I was even more concerned with.

"11.  I particularly remember that I did not want the last juror who was seated on my jury to be on my jury.  However, because we had used up all of our peremptory challenges I believed that there was nothing we could do about it.

"12.  Had I known I was entitled to 13 peremptory challenges, I would have used more of them."

For purposes of our discussion, we accept these affidavits as true.  On that basis, they can be read together to state that the defendant informed trial counsel that he did not want Juror 43 on his jury but that, because of counsel's legal error, Juror 43 was not challenged.  In addition, other jurors were also seated without challenge because of counsel's error.  On these facts, counsel's failure to assert his client's objection to one or more jurors because of counsel's ignorance of the law satisfies the first prong of Commonwealth v. Saferian, 366 Mass. at 96, that counsel's "behavior . . . [fell] measurably below that which might be expected from an ordinary fallible lawyer," particularly considering the magnitude of the error (five peremptories rather than thirteen) and the absence of any tactical advantage.

That said, the affidavits -- even accepted in their entirety -- do not establish the second prong of Saferian, that defense counsel's performance "has likely deprived the defendant

of an otherwise available, substantial ground of defence."[12]
Ibid.  See Commonwealth v. Torres, 453 Mass. 722, 731 (2009)
(failure to exercise peremptory challenge not ineffective
assistance of counsel where no prejudice results).  See also
Commonwealth v. Daye, 435 Mass. 463, 478 (2001) (same);
Commonwealth v. Fudge, 20 Mass. App. Ct. 382, 390-391 (1985)
(without showing of prejudice, counsel's inaction regarding
questioning of jurors did not constitute ineffective assistance
of counsel).  As set out above, the defendant has not suggested
or shown that any seated juror could have been challenged for
cause.  Nor does he challenge the judge's finding that each
juror was indifferent.  The defendant has given no reason for
his assertion that he would have challenged Juror 43, nor is any
reason apparent on the record.  And, as to the other jurors he
claims he would have challenged, he has failed even to identify
them, let alone given any basis for his objection to them.  He
has not shown that he was deprived of a fair and impartial jury.

---

[12] We recognize that the credibility of the affidavits is
not ours to assess, but lies within the discretion of the judge,
who "may evaluate them in light of factors pertinent to
credibility, including bias, self-interest, and delay."
Commonwealth v. Torres, 469 Mass. 398, 403 (2014).  Although in
other situations we would remand for an evidentiary hearing,
particularly given that the motion raised a substantial issue,
see Commonwealth v. Licata, 412 Mass. 654, 660-662 (1992);
Mass.R.Crim.P. 30(c)(3), as appearing in 435 Mass. 1501 (2001),
remand is not necessary here because even accepting the
affidavits as true, they do not satisfy the second prong of
Commonwealth v. Saferian, 366 Mass. at 96.

For the reasons set out above, we decline to disturb the judgment.

<u>Judgment affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.