NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

17-P-431                                          Appeals Court


COMMONWEALTH  vs.  WALTER CRAYTON.


No. 17-P-431.

Middlesex.      December 13, 2017. - May 23, 2018.

Present:  Vuono, Sullivan, & Massing, JJ.


Obscenity, Child pornography.  Constitutional Law, Jury,
     Identification, Sentence.  Due Process of Law,
     Identification, Sentence.  Jury and Jurors.  Practice,
     Criminal, Challenge to jurors, Empanelment of jury,
     Bifurcated trial, Sentence.  Evidence, Identification.




     Indictments found and returned in the Superior Court
Department on September 10, 2009.

     Following review by the Supreme Judicial Court, 470 Mass.
228 (2014), the cases were tried before Elizabeth M. Fahey, J.


     David B. Hirsch for the defendant.
     Timothy Ferriter, Assistant District Attorney, for the
Commonwealth.


     VUONO, J.  A Middlesex County grand jury returned two

indictments charging the defendant, Walter Crayton, with

possession of child pornography in violation of G. L. c. 272,

§ 29C.  He was charged as a subsequent offender and, therefore,

he faced imprisonment for "not less than five years." G. L. c. 272, § 29C(vii). The charges stemmed from the defendant's viewing of child pornography on a computer at the Central Square branch of the Cambridge Public Library on January 21, 2009. He was convicted on both indictments and the subsequent offender portion of the first indictment following a bifurcated trial.[1] See G. L. c. 278, § 11A. The convictions were vacated and a new trial ordered by the Supreme Judicial Court because, among other reasons, the admission of two in-court showup identifications resulted in unfair prejudice. See Commonwealth v. Crayton, 470 Mass. 228 (2014) (Crayton I). A new trial was conducted in 2015. The defendant was again convicted of the underlying offenses by a jury, after which a separate jury convicted him of the second and subsequent offense portion of the first indictment.[2]

In this appeal, the defendant claims that he is entitled to a new trial because the trial judge erred in (1) allotting to each side six peremptory challenges instead of fourteen in

_____

[1] The Commonwealth filed a notice of nolle prosequi in relation to the subsequent offender portion of the second indictment following the return of the jury's verdict at the conclusion of the first phase of the trial.

[2] At sentencing, upon the Commonwealth's request, the second indictment was dismissed as duplicative, and the defendant was sentenced to five to eight years in State prison.

connection with the first phase of the trial; (2) admitting in evidence an in-court identification of him by a library employee; and (3) imposing an allegedly harsher sentence than the one imposed following his first trial, in violation of his right not to be placed in double jeopardy.

We agree with the defendant that he was deprived of eight peremptory challenges to which he was entitled during the first phase of the trial. Because fourteen jurors were seated pursuant to Mass.R.Crim.P. 20(d)(1), 378 Mass. 889 (1979) (rule 20), and the defendant was charged with a "crime punishable by imprisonment for life," rule 20(c)(1), he was entitled to fourteen peremptory challenges. Commonwealth v. Berardi, 88 Mass. App. Ct. 466, 469-470 (2015) (Berardi). Where, as here, the error was preserved, a new trial is required. In light of our conclusion, we briefly address the defendant's remaining claims, as those issues may arise in any retrial.

Background. The factual basis for the indictment is described in detail in Crayton I, 470 Mass. at 230-233, and need not be repeated here. What follows are the facts surrounding the defendant's exercise of peremptory challenges at his retrial. At the beginning of the first phase of the trial, the defendant requested twelve peremptory challenges, or more, depending on the number of jurors seated. Although the Commonwealth agreed that the defendant was entitled to

additional peremptory challenges, the judge nonetheless denied the request and allotted each side six peremptory challenges for a jury of fourteen (twelve plus two alternates).  The defendant objected and renewed his objection during the empanelment process when, after having exercised five peremptory challenges, he sought additional challenges to exclude Jurors 50, 61, and 48.  Trial counsel's reasons for wanting to exclude these three jurors were as follows.

Juror 50, a Baptist minister, hesitated when asked whether he would be willing to look at the evidence in order to decide whether it constituted pornography.[3]  When trial counsel asked the judge to inquire further, she refused to do so.  Trial counsel objected to the denial of her request, but she did not request that Juror 50 be excused for cause.  Juror 61 worked at

---

[3] The judge asked Juror 50 whether he would be "willing to look at and to discuss with . . . fellow jurors the trial exhibits, [which included] images of a sexually explicit nature involving children."  Juror 50 responded, "That's a hard question, your Honor.  I find it hard in that, you know, as a minister, as well, and having worked with children, I'm torn in that.  I'm not sure if I can or not."  Juror 50 continued, "Well, I'm physically capable of looking at them; how they would affect -- you know, how -- what my reaction would be, I don't, you know -- or whether it would -- "  The judge interjected, "I'm not looking for what your reaction is.  If you're willing to . . . look at them and discuss them with your fellow jurors, that's what's necessary.  Is that something you're willing to do?"  Juror 50 stated, "I suppose I could do that, yes."  The judge then asked, "You're willing to?" and Juror 50 responded, "I am willing to."

a university and was employed as a librarian.  As she had with Juror 50, trial counsel asked the judge to inquire further, specifically indicating her concern that the juror's "role as a librarian" would affect her ability to be fair and impartial in light of the fact that the offenses allegedly occurred in a library.[4]  This request was similarly rebuffed.  Lastly, as to Juror 48, trial counsel observed that the juror's brother was a law enforcement officer and, although Juror 48 ultimately stated that he would not believe a police officer over another witness, he also stated that he trusted his brother.[5]  Trial counsel expressed her concern over Juror 48's ability to remain impartial and reiterated her position that she would exclude all three jurors if she could.  The defendant then used his sixth and last peremptory challenge to remove Juror 50, the Baptist minister.  Jurors 61 and 48 remained seated.  When the judge asked the parties whether they were content with the jury, the

---

[4] Counsel expressed concern that Juror 61 was "going to see herself in that role when she's deliberating."

[5] When asked by the judge whether he would "use whatever factors you use in evaluating every witness's credibility" when evaluating the testimony of a police officer, Juror 48 responded, "Again, my brother's a cop; I trust him.  I know that there are good, bad, everything.  So I really -- I'd have to see each person, individual.  I can't really answer that now and say I'm not going to trust someone just because they're a police officer.  I'm also not going to trust someone just because they claim to be telling the truth."

prosecutor responded affirmatively, but trial counsel stated, "I don't have any more challenges." When pressed by the judge ("So you're content?"), trial counsel stated twice more that she was out of challenges, requested extra challenges, and explained her reasons.[6]

After the verdict was returned, a second jury was empanelled for the second phase of the trial and the judge allotted each side fourteen peremptory challenges.

Discussion. 1. Peremptory challenges. The outcome of this case is controlled in all material respects by our decision in Berardi.[7] In Berardi, we held that a defendant who faced a mandatory minimum sentence of five years, with no specified maximum sentence because he was charged as a subsequent

---

[6] Counsel stated: "Your Honor, I have three people I want to challenge. I'd ask for an opportunity to have extra challenges. And I can give you the reasons for each challenge." The judge stated, "I don't get to do that. You get six." Trial counsel objected and put on the record the following reasons for the challenges: "I would challenge Juror 50 in Seat No. 8. He's a Baptist minister who was very, very hesitant in whether he could view these. I would also -- I would challenge . . . Juror 61 in Seat No. 13, who is a librarian. I think, given the nature of this case and that it takes place in a library, that she would be challengeable. And I would challenge No. 48 in Seat No. 7, who has a brother who is a police officer and said he had a hard -- he couldn't decide whether he could be impartial . . . those would be the three that I would challenge if I were given three challenges."

[7] Berardi was decided approximately one month after the conclusion of the defendant's retrial.

offender, is presumed to face "imprisonment for life" and was entitled under rule 20 to "twelve peremptory challenges of the jurors called to try the case . . . [plus] one additional peremptory challenge for each additional juror" for the first phase of the trial.[8]  88 Mass. App. Ct. at 469-470.  Berardi, a registered sex offender, was indicted for knowingly providing false information on a registration form, in violation of G. L. c. 6, § 178H(a).  He was allotted only five peremptory challenges for the trial on the underlying offense, even though thirteen jurors were empanelled and the judge intended to use the same jury for both phases of the bifurcated trial.[9]  Despite the "magnitude of th[is] error," we did not reverse the conviction because Berardi (1) had not preserved the error,[10] and (2) failed to show that he did not receive a fair and impartial

---

[8] Rule 20 provides, in pertinent part, that each defendant shall be entitled to twelve peremptory challenges upon the trial of an indictment for a crime punishable by imprisonment for life.  In a trial of an indictment for a crime punishable by imprisonment for life in which additional jurors are empanelled pursuant to rule 20(d)(1), the defendant "shall be entitled to one additional peremptory challenge for each additional juror." Rule 20(c)(1).

[9] The judge so informed the defendant at the jury-waiver colloquy, and the defendant elected to proceed with a bench trial on the subsequent offense charge.  Berardi, 88 Mass. App. Ct. at 468, 471.

[10] Berardi did not object to the number of peremptory challenges until he filed a motion for a new trial some two and one-half years after he was convicted.  88 Mass. App. Ct. at 469.

jury.  Berardi, supra at 474.  Berardi used all of his peremptory challenges, but he did not challenge the judge's determination that each seated juror was indifferent.  Id. at 472-473.

"Although the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution guarantee the right to be tried by an impartial jury, there is no Federal or State constitutional right to exercise peremptory challenges."  Commonwealth v. Mello, 420 Mass. 375, 396 (1995).  Rather, "peremptory challenges are a creature of statute," and, thus, a defendant is deprived of his constitutional right to an impartial jury "only if [he] does not receive that which state law provides."  Ross v. Oklahoma, 487 U.S. 81, 89 (1988).

Here, at the time of the defendant's retrial, State law provided that "[n]o irregularity in . . . [the] impanelling of jurors shall be sufficient to set aside a verdict, unless the objecting party has been injured thereby or unless the objection was made before the verdict."  Berardi, 88 Mass. App. Ct. at 473, quoting from G. L. c. 234, § 32.[11]  As we explained in

---

[11] General Laws c. 234 was in full force and effect at all times pertinent to this appeal; the statute was subsequently repealed by St. 2016, c. 36, § 1.  After the effective date of the repeal, May 10, 2016, a defendant seeking to overturn his conviction on the basis of defects in the empanelment process

Berardi, "[n]o prejudice need be shown if the defendant timely objects before the verdict or if [his] 'exercise of a peremptory challenge is erroneously denied and the challenged juror is seated on the panel and participates in deciding the case.'" Ibid., quoting from Commonwealth v. Bockman, 442 Mass. 757, 763 (2004).

The defendant in the present case objected multiple times to the reduced number of peremptory challenges and asked for additional ones. When his requests were denied and he had only one remaining challenge, he set forth his reasons for eliminating three potential jurors. Two of these jurors then were seated after he had exhausted his peremptory challenges. These factors mandate a result different from the one we reached in Berardi.

The Commonwealth seeks to distinguish Berardi on the ground that, whereas only one jury was empanelled in that case, here it was clear from the outset that the judge intended to empanel two separate juries. This argument is unavailing. Our decision in Berardi unequivocally requires that a defendant facing "imprisonment for life" as a subsequent offender be allotted an

---

must both timely object and show that he was prejudiced by the procedure. See G. L. c. 234A, § 74; Commonwealth v. Sheehy, 412 Mass. 235, 237-238 (1992); Commonwealth v. Vuthy Seng, 456 Mass. 490, 495 n.7 (2010); Commonwealth v. Jackson, 471 Mass. 262, 271 (2015).

increased number of peremptory challenges at the first phase of the bifurcated proceeding.  See Berardi, 88 Mass. App. Ct. at 470 ("Rule 20 does not operate differently in bifurcated trials nor does it apply only to the subsequent offender phase of a bifurcated trial").  The defendant faced the possibility of life imprisonment when he was placed at bar during the first phase of the trial, and he was entitled under rule 20 to additional peremptory challenges.  Id. at 469-470.  To hold otherwise would force a defendant to choose one jury for both phases of a bifurcated trial in order to receive the increased number of peremptory challenges.  We agree with the defendant that such a result would be impracticable, potentially unfair, and inconsistent with rule 20 and G. L. c. 278, § 11A.

2.  Issues for retrial.  We briefly comment on the defendant's remaining claims.

a.  Identification.  In Crayton I, 470 Mass. at 241-242, the Supreme Judicial Court announced a new rule governing the admissibility of in-court identifications of a defendant by eyewitnesses who were present during the commission of the crime but had not participated before trial in an identification procedure.  The rule states that such in-court identifications will be treated as an "in-court showup," admissible "only where there is 'good reason.'"  Id. at 241.  The defendant argues that the judge abused her discretion and ignored the new rule

announced in Crayton I by allowing Ricardo Ricard, an eyewitness who was not present during the commission of the crime, and did not participate in any out-of-court identification procedure, to make an in-court identification of the defendant. We disagree.

Ricard was employed as a senior technician at the library where the offenses occurred. He testified that the defendant came to the library once or twice a week to use the computers. At times when there was a wait list, the defendant used the initial "W" to sign up to use a computer. Ricard did not see the defendant using a computer on January 21, 2009, but, after he was informed of an "incident" relating to the use of a certain computer, Ricard disabled the software on that computer and observed a folder on the computer labeled "W." That folder contained the child pornography the defendant was accused of possessing. Ricard made an in-court identification of the defendant as the same person who used the initial "W."

We agree with the Commonwealth that the new rule announced in Crayton I does not bar Ricard's in-court identification.[12] The court explicitly stated that the new rule "shall apply only to in-court identifications of the defendant by eyewitnesses who were present during the commission of the crime." Crayton I,

---

[12] We note that in Crayton I, no issue was raised as to any identification of the defendant by Ricard. See Crayton I, 470 Mass. at 229, 245.

470 Mass. at 242.  The court did not address whether the new rule "should apply to in-court identifications of the defendant by eyewitnesses [like Ricard] who were not present during the commission of the crime but who may have observed the defendant before or after the commission of the crime."  Id. at 242 n.17. In any event, the judge did not abuse her discretion in allowing Ricard's in-court identification.  Although not required, see Commonwealth v. Galipeau, 93 Mass. App. Ct. 225, 232 (2018), the judge conducted a voir dire of Ricard, after which she properly determined there was "good reason" to allow an in-court identification because, based on his interactions with the defendant at the library, Ricard was "familiar with the defendant before the commission of the crime."  Crayton I, supra at 242.

b.  Sentencing.  Following his first trial, the defendant was sentenced on the first indictment to serve from five years to five years and one day in State prison.[13]  On the second indictment, he was sentenced to from three years of probation to be served on and after the prison sentence imposed on the first indictment.  As we have noted, following his convictions at the retrial, the second indictment was dismissed as duplicative.

_____

[13] The sentence was later revised to four and one-half to five years.  Crayton I, 470 Mass. at 229 n.1.

See Commonwealth v. Rollins, 470 Mass. 66, 70-75 (2014).  Thus,
in determining the appropriate sentence after the retrial, the
second judge no longer had the option of imposing a term of
probation.  The judge imposed a sentence of from five to eight
years in State prison, so that the defendant would receive
supervision in the event he was paroled.[14]  As the judge
explained, although the sentence "may be stricter," it provided
the opportunity for supervision in the future.  The sentence was
affirmed by the Appellate Division of the Superior Court.
Compare id. at 75 (appropriate remedy for duplicative
convictions is to "vacate the duplicative convictions and remand
for resentencing").

---

[14] The judge stated that she was imposing the Commonwealth's
recommended sentence "because it seems to me that the -- well,
first, the defendant wants Gardner.  He wants the treatment
center, to the extent there's a program there.  And I want the
mittimus to include my recommendation that [the Department of
Correction], if any way possible, put him there.  He's willing
to deal with this issue that he has.  It's replete in his
criminal record.  And I don't have any way now of giving him the
probationary term of three years that the previous judge gave.
I'm imposing five to eight.  He will get credit for already
serving almost six years.  So I want him to be able to take
advantage and for the parole board to be able to, if they
release him, have some -- parole is the equivalent of probation.
So if they release him, it really would be the equivalent of
probation.  It may be stricter, but that's what I want him to
have, some kind of supervision when he's out on the street, so -
- to be sure that he can learn to deal with, either at Gardner
or in a program while on parole, that can help him deal with his
sex offender past."

The defendant claims that he was subjected to double jeopardy because the sentence imposed after retrial was more severe than the one originally imposed.  Assuming without deciding that the defendant received a harsher sentence after his retrial, the principle of double jeopardy is not implicated because the prior sentence did not come about as a "result of acquittal with respect to an essential element required for imposition of the harsher sentence."  Commonwealth v. Jarvis, 68 Mass. App. Ct. 538, 541 (2007), citing Sattazahn v. Pennsylvania, 537 U.S. 101, 111-112 (2003).  The issue is more properly framed as one concerning the question of judicial vindictiveness.  See Commonwealth v. Hyatt, 419 Mass. 815, 823 (1995) (the issue of judicial vindictiveness arises from a judge's imposition on reconviction of a sentence more severe than that imposed after the first trial).  Under our common law, "when a defendant is again convicted of a crime or crimes, the second sentencing judge may impose a harsher sentence or sentences only if the judge's reason or reasons for doing so appear on the record and are based on information that was not before the first sentencing judge."  Ibid.  Although we discern no vindictiveness in the judge's decision to impose a five to eight year State prison sentence, we need not reach the merits of the defendant's claim.  Even if we were to agree with the defendant, the proper remedy would be to vacate the sentence.

Given our conclusion that a new trial is required, this effectively has already taken place.

<u>Judgment reversed</u>.

<u>Verdict set aside</u>.