NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

11-P-1160                                           Appeals Court

COMMONWEALTH  vs.  MIGUEL CRUZ.

No. 11-P-1160.

Suffolk.      March 1, 2016. - August 18, 2016.

Present:  Cypher, Cohen, & Neyman, JJ.

Controlled Substances.  "School Zone" Statute.  Practice,
    Criminal, New trial, Public trial, Assistance of counsel.
    Constitutional Law, Public trial, Assistance of counsel.
    Words, "Preschool."

Indictments found and returned in the Superior Court
Department on March 6, 2008.

The cases were tried before Regina L. Quinlan, J., and a
motion for a new trial, filed on August 22, 2012, was heard by
Raymond J. Brassard, J.

James E. Methe for the defendant.
Matthew P. Landry, Assistant Attorney General, for the
Commonwealth.

CYPHER, J.  Following a jury trial, the defendant, Miguel

Cruz, was convicted of two counts of trafficking in cocaine,

G. L. c. 94C, § 32E(b); two counts of distribution of cocaine,

G. L. c. 94C, § 32A(c); and four counts of distributing drugs in

a school zone, G. L. c. 94C, § 32J. On the defendant's consolidated appeal from his convictions of the four school zone violations and the denial of his motion for a new trial, the primary issue is whether a child care facility that enrolls younger than school aged children can qualify as a "preschool" within the meaning of the school zone statute. Concluding that it does, and finding no merit in the defendant's remaining claims, we affirm.

Background. Taken in the light most favorable to the Commonwealth, the evidence showed that, on four occasions between November 20, 2007, and December 12, 2007, the defendant sold cocaine to a police officer working undercover.[1] Three of the drug transactions occurred at a street address located approximately 259 feet from the parking lot of the East Boston YMCA, and a fourth transaction was conducted in a vehicle parked 173 feet and 4 inches from the same YMCA property.[2] A private, nonprofit social service organization, the East Boston YMCA operates within its building a health center, teen programs, and the East Boston Child Care Center (center). The center is

---

[1] On appeal, the defendant does not contest the evidence supporting his convictions of distributing and trafficking in cocaine.

[2] There was testimony at trial that the drug transactions took place across the street from Bremen Street Park, a public park adjacent to the YMCA. However, the Commonwealth presented no evidence to establish the distance between the drug transactions and the park.

licensed as a child care facility by the Massachusetts department of early education and care. It is also accredited by the National Association for the Education of Young Children, which assesses the center's staffing levels and the educational capabilities of its teachers. Ninety-three children between the ages of fifteen months and five years were enrolled in the center at the time of the defendant's trial.

Discussion. 1. Sufficiency of the evidence. The defendant argues that the Commonwealth's evidence was insufficient to support his convictions of distributing drugs in a school zone because the center operated by the YMCA did not qualify as a "preschool" within the meaning of the statute.

"[I]n a prosecution pursuant to G. L. c. 94C, § 32J, the Commonwealth is required to produce sufficient evidence to establish that the school is one of the types enumerated in the statute." Commonwealth v. Gonzales, 33 Mass. App. Ct. 728, 730 (1992). The school zone statute provides, as pertinent here:

> "Any person who violates the provisions of [G. L. c. 94C, §§ 32A or 32E,] while in or on, or within one thousand feet of the real property comprising a public or private accredited preschool, accredited headstart facility, elementary, vocational, or secondary school whether or not in session, or within one hundred feet of a public park or playground shall be punished" (emphasis supplied).

G. L. c. 94C, § 32J, as amended by St. 1998, c. 194, § 146.[3]  The statute does not define the term "preschool."  "When a statute does not define its words we give them their usual and accepted meanings," deriving such meanings "from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  Commonwealth v. Gopaul, 86 Mass. App. Ct. 685, 689 (2014), quoting from Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  In another legal context, the term "preschool" appears in G. L. c. 15D, § 1A, among the types of institutions that may constitute a "child care center," for purposes of the department of early education and care.[4]  Dictionaries define "preschool" as "a school for children who are not old enough to attend kindergarten; a nursery school," The American Heritage Dictionary 1432 (3d ed.

---

[3] The school zone statute was subsequently amended to reduce the radius of the school zone from 1,000 to 300 feet.  See G. L. c. 94C, § 32J, as amended by St. 2012, c. 192, § 30.  Because the defendant's convictions entered before the bill's effective date, the change in the statue does not apply to this case, as the change was prospective only.  In any case, the drug transactions occurred within 300 feet from the child care facility.

[4] The statutory provision governing the department of early education and care defines a child care center as "a facility operated on a regular basis whether known as a child nursery, nursery school, kindergarten, child play school, progressive school, child development center, or preschool . . . which receives children not of common parentage under seven years of age . . . for nonresidential custody and care during part or all of the day separate from their parents."  G. L. c. 15D, § 1A.

1992); and as a "nursery school, kindergarten," Webster's Third New International Dictionary 1792 (2002).[5] Based on these sources, we understand the usual and accepted meaning of "preschool" to be a facility where children of younger than elementary school age receive educational instruction.

The Commonwealth did not specify at trial which of the schools enumerated in the statute it sought to prove.[6] We agree with the defendant that the school zone statute applies to public or private accredited preschools, as opposed to daycare facilities, which are not among the institutions that fall within the statutory zone of protection. See Commonwealth v. Gonzales, 33 Mass. App. Ct. at 729-730, quoting from Commonwealth v. Domaingue, 397 Mass. 693, 697 (1986). ("The language of the statute is unequivocal and, therefore, 'the Legislature must be presumed to have intended to limit the application of the statute to the [types of schools]

---

[5] While Massachusetts appellate courts have not defined the term "preschool" in a published opinion, we have had occasion to consider the issue in Commonwealth v. Rivera, 70 Mass. App. Ct. 1106 (2007), an unpublished memorandum and order pursuant to our rule 1:28 in which, relying upon dictionary definitions, a panel of this court similarly held a preschool to be a "kindergarten or nursery school for children of preschool age."

[6] In trial testimony, the police officer who measured the distance between the scene of drug sales to the East Boston YMCA for the purpose of proving a school zone violation characterized the YMCA facility as a "daycare center." The prosecutor, too, referred to the center as a "daycare," and the executive director of the East Boston YMCA agreed that the center was a daycare facility.

specifically enumerated'"); Commonwealth v. Burke, 44 Mass. App. Ct. 76, 78 (1997) (holding, before statute was amended to include preschools, that "a kindergarten, together with a preschool, is not an elementary school" and, accordingly, is not within protected zone).  Cf. Commonwealth v. Lawrence, 69 Mass. App. Ct. 596, 600 (2007) ("The generic term 'school' encompasses all forms of licensed or [ac]credited educational entities, and would certainly include preschool and day care facilities").

Nonetheless, viewed under the familiar Latimore standard,[7] the evidence in this case sufficed to permit a jury reasonably to find that the center qualified as a preschool within the meaning of the school zone statute.  The executive director of the East Boston YMCA testified that the center enrolled ninety-three children of younger than elementary school age; that the center was staffed by teachers with educational capabilities; and that the center was accredited by a national association for early childhood education.[8]  See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable"); Commonwealth v. Laro, 68 Mass. App. Ct. 556, 560

---

[7] See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

[8] The defendant does not dispute that the center is an accredited facility, a requirement for private preschools under the school zone statute.

(2007) ("Although the jury were not required to find that the [parochial institution] was an elementary school, it was far from irrational for them to have done so").

The defendant urges us to strictly construe the language of the statute against the government and conclude that a child care center does not qualify as a preschool for the purposes of the school zone provisions. However, the maxim that penal statutes should be strictly construed "is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." Simon v. Solomon, 385 Mass. 91, 102-103 (1982). Our determination that the center qualifies as a preschool conforms with the statutory provision that locates the term "preschool" under the more general rubric of "child care center," as the center at issue is undoubtedly a child care facility that, additionally, provides educational instruction. See G. L. c. 15D, § 1A. Moreover, our interpretation comports with the broad purpose of the school zone statute, which was enacted to "make every school and surrounding community safe from the destructive impact of drug trafficking and drug abuse." Commonwealth v. Roucoulet, 413 Mass. 647, 651 n.7 (1992) (quoting from a communication by Governor Michael Dukakis to the members of the Massachusetts Legislature). See Commonwealth v. Bell, 442 Mass. 118, 125 (2004) ("The broad purpose of the school zone statute, which is

expressed in the statute's language and legislative history, as well as in decisional law, should not be unnecessarily limited").

2. <u>Motion for a new trial</u>. The defendant brought a motion for a new trial, raising claims of court room closure and ineffective assistance of counsel. The motion judge conducted an evidentiary hearing on the defendant's claims and, in a written memorandum of decision, denied the motion. The defendant reiterates the same arguments in his direct appeal that he raised in his motion for a new trial.

a. <u>Court room closure</u>. The defendant maintains that his right to a public trial was violated when the court room was closed to his relatives during jury empanelment.[9] He argues that the motion judge erred in failing to consider statements favorable to the defendant in affidavits and in testimony at the evidentiary hearing, and abused his discretion in denying the defendant's motion for a new trail.

_____

[9] The defendant did not raise an objection to the issue of court room closure during jury empanelment or at any point in trial proceedings. Cf. <u>Commonwealth</u> v. <u>Lopes</u>, 89 Mass. App. Ct. 560 (2016). Many of our cases have held that where counsel fails to timely object to closure of a court room, the defendant's public trial claim is waived. See, e.g., <u>Commonwealth</u> v. <u>Lavoie</u>, 464 Mass. 83, 84-85 (2013); <u>Commonwealth</u> v. <u>LaChance</u>, 469 Mass. 854, 856-857 (2014). Nevertheless, where, as here, the motion judge gave the defendant's claim full consideration at an evidentiary hearing, we need not address the question of procedural waiver.

"A decision whether to allow a new trial 'is addressed to the sound discretion of the [motion] judge.'" Commonwealth v. Cadet, 473 Mass. 173, 179 (2015), quoting from Commonwealth v. Perkins, 450 Mass. 834, 845 (2008). An appellate court accepts a motion judge's findings of fact drawn from an evidentiary hearing if supported by the record, see Commonwealth v. Walker, 443 Mass. 213, 224-225 (2005), and "defer[s] to that judge's assessment of the credibility of the witnesses at the hearing." Commonwealth v. Grace, 397 Mass. 303, 307 (1986).

In his motion for a new trial, the defendant claimed that he was denied a public trial when the court room was closed to members of his family during jury empanelment. He supported his motion with affidavits from his trial counsel and his relatives, who averred that court officers prevented members of the defendant's family from entering the court room while jury empanelment for his trial was underway. "A defendant claiming a violation of his right to a public trial must show that the court room was closed to the public." Commonwealth v. Rogers, 459 Mass. 249, 263 (2011). "Some affirmative act by the court or one acting on its behalf is required." Ibid., citing Commonwealth v. Cohen (No. 1), 456 Mass. 94, 107-108 (2010).

At the evidentiary hearing on the motion, the defendant's trial counsel and brother-in-law testified for the defendant; the trial judge, the prosecutor, an assistant trial court clerk,

and a trial court officer testified for the Commonwealth. At the close of testimony, the motion judge asked both parties to submit proposed findings of fact. In a footnote in his memorandum of decision, the motion judge indicated that he drew from both parties' proposed findings to compose his findings of fact. He prefaced his findings with the statement that the facts were "[b]ased upon the credible evidence introduced at the evidentiary hearing" "Such a statement leaves no room for supplementation of the judge's findings of fact." Commonwealth v. Jones-Pannell, 472 Mass. 429, 438 (2015).

Crediting testimony of the trial judge, court clerk, and court officer, and portions of testimony from the defendant's trial counsel and brother-in-law, the motion judge found that no member of the public was prohibited from entering the court room on the two days of jury empanelment. He concluded that the defendant had not presented sufficient credible evidence to show that his family was prevented from entering the court room during jury selection for his trial, and consequently, he denied the defendant's motion for a new trial.

Because a review of the motion hearing transcript supports the judge's findings of fact, we determine that there was no error. The defendant's contention that the judge failed to consider any of the affidavits and testimony purporting to show that the court room was closed is to no avail. As the motion

judge did not incorporate the testimony to which the defendant refers into his findings of fact, he implicitly did not credit that testimony. We defer to the motion judge's assessment of credibility. See Commonwealth v. Ridge, 455 Mass. 307, 325 (2009). Likewise, the motion judge was not required to base his decision on the affidavits, particularly after conducting an evidentiary hearing. See Commonwealth v. Stewart, 383 Mass. 253, 257 (1981) ("The decision on a motion for a new trial, as well as the decision whether to decide the motion on the basis of affidavits or to hear oral testimony, is left largely to the sound discretion of the judge"). There was no abuse of discretion in the denial of the defendant's motion for a new trial on this ground.

b. Ineffective assistance of counsel. The defendant argues also that he was denied effective assistance of counsel because his trial counsel failed to communicate a plea offer to him, and as a result, he proceeded to trial and received a harsher sentence than the one offered.[10]

We note at the outset that this claim was expressly withdrawn by the defendant's motion counsel at the close of the

_____

[10] In his motion for a new trial, the defendant based his claim of ineffective assistance upon three allegations of error: trial counsel (1) incorrectly advised him that drug addiction was a defense; (2) failed to advise him of mandatory minimum sentences; and (3) failed to inform him of any plea offers. The defendant raises only the third claim of error on appeal.

evidentiary hearing on the motion for a new trial.  Moreover, the motion judge found as a matter of fact and of law that the defendant presented no evidence to support his claim of ineffective assistance of counsel.

Nevertheless, the defendant presses his claim that a letter written by trial counsel shows that the prosecutor made an offer of a five-year sentence that trial counsel rejected without consulting the defendant.  At the evidentiary hearing, both trial counsel and the prosecutor testified that any plea offers made before trial were advanced by trial counsel and flatly rejected by the prosecutor.  The motion judge's finding that the defendant presented no evidence to support his claim was not clearly erroneous, and therefore, the defendant was not deprived of a substantial ground of defense.  See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  As we concluded in the section addressing court room closure, the defendant's motion for a new trial was properly denied.

For the above reasons, the judgments are affirmed, and the order denying the defendant's motion for a new trial is affirmed.

So ordered.