Salinger, Kenneth W., J.
Defendant Jason Robinson was convicted of first degree murder in 2002. He *33 now moves for a new trial on the grounds that: (i) his constitutional right to a public trial was violated because the court was closed during juiy empanelment; (ii) there was insufficient evidence to support a conviction for felony-murder; (iii) newly discovered evidence suggests that the Commonwealth’s main witness did not testify truthfully; (iv) the Commonwealth withheld potentially exculpatoiy evidence; and (v) it is unconstitutional to sentence Robinson to life in prison with no possibility of parole because he was nineteen years old when the victim was killed and his brain was not yet fully developed. The Court conducted an evidentiary hearing regarding Robinson’s public trial claims and has scheduled a further eviden-tiary hearing regarding his claims about adolescent brain development.
The Court concludes that it must ALLOW Robinson’s motion for a new trial and vacate his convictions for murder and unlawful possession of a firearm. As explained below, the Court finds that Robinson was denied his constitutional right to a public trial because the public was barred from the courtroom throughout the jury selection process. It also finds that Robinson did not acquiesce in this courtroom closure or waive his public trial right in any other way: neither Robinson nor his lawyer knew that the public was not allowed to observe the jury voir dire; defense counsel was not aware of any general practice of barring the public from jury selection; and this is Robinson’s first motion for a new trial and the first post-verdict opportunity Robinson has had to raise this claim of error. There is no merit to the Commonwealth’s assertion that any failure to object at trial to a courtroom closure waives the error, even if the defendant and his counsel did not know and had no reason to suspect that it was happening. The Court is therefore required by law to vacate Robinson’s convictions and order a new trial without inquiring whether Robinson has demonstrated that the unlawful courtroom closure created any substantial risk or likelihood of a miscarriage of justice.
1. Procedural History
The dockets for this case and the transcripts from the trial of this matter indicate the following.[1]
Jason Robinson and codefendant Tanzerious Anderson were tried together in 2002. Robinson was indicted on one charge of murder in the first degree, two charges of armed robbery, and one charge of unlawful possession of a firearm. The case was tried before Judge Barbara Rouse.
Trial of this case took place over eleven days. It began on Tuesday, March 19, 2002. That morning the trial judge first held a final trial conference to discuss jury empanelment and some motions in limine with defense counsel. The conference began at 10:10 a.m. and ended at 10:26. After a short recess jury empanelment started at 10:44 a.m.[2] During that recess a venire or pool of thirty-five to forty prospective jurors was brought into the courtroom.[3] Jury selection continued for the rest of the day, except for a lunch break from 1:10 p.m. to 2:25 p.m. After the first pool of prospective jurors was exhausted, a second venire was brought into the courtroom at 3:12 p.m. A jury of 15 jurors was empanelled by the end of the afternoon on that first day. After some short preliminary instructions the 15 jurors were excused for the day at 4:58 p.m.
The fifteen jurors were sworn in the next morning, on March 20, 2002. They were then taken on a view of certain locations in Brighton. The jury began hearing evidence that afternoon. The Commonwealth finished presenting evidence and rested on March 27. The trial judge then allowed Robinson’s motion for a required finding of not guilty with respect to indictment 002, which was one of the two charges of armed robbery. The jury heard closing arguments, was instructed by the judge, and began deliberations on March 28. It rendered its verdict on April 3, 2002.
The jury found Robinson to be guilty of first degree murder, armed robbery, and illegal possession of a firearm. With respect to the murder charge, the jury found that Robinson was guilty of first degree based only on a theory of felony murder, both as a principal and as a joint venturer, and not on theories of acting with deliberate premeditation or with extreme atrocity or cruelty. With respect to the armed robbery and firearm possession charges, the jury found that Robinson was guilty as a joint venturer but not as a principal.[4] The trial judge vacated the conviction for armed robbery and dismissed that indictment. She sentenced Robinson to life in prison without the possibility of parole on the first degree murder conviction and to a concurrent sentence of four to five years on the firearm conviction.
Robinson filed a timely notice of appeal, but that appeal has been stayed pending resolution of Robinson’s belated motion for a new trial. Robinson’s appeal was docketed in the Supreme Judicial Court on May 14, 2004, two years after the trial. In July 2007 the SJC asked defense counsel to report on the status of the appeal. Over the next seven years defense counsel submitted a series of twenty-eight status letters regarding her plans to file a motion for a new trial. The Commonwealth first expressed concern about the delay in prosecuting this appeal in January 2012, when it filed a motion asking the SJC to set a briefing schedule. It renewed that request three more times, in January 2013, January 2015, and August 2015. The SJC denied the last of these motions without prejudice and ordered defense counsel to file Robinson’s motion for a new trial with the SJC rather than in the Superior Court. Defense counsel filed Robinson’s new trial motion with the SJC on September 11, 2015. One week later the SJC ordered that the appellate proceedings be stayed pending disposition of the new trial motion. *34 It remanded the case to the Suffolk Superior Court for disposition of that motion.
The Commonwealth filed its opposition to Robinson’s motion for a new trial in March 2016. By that time the trial judge had retired. As a result, Robinson’s new trial motion was assigned to a different judge. The new trial motion was originally assigned to Judge Frank Gaziano. After he was appointed to serve as an Associate Justice of the Supreme Judicial Court the motion was assigned to a different judge. The Court held a status conference on September 1, 2016.
The Court decided that it would need to hear evidence on the courtroom closure issue raised in the motion for a new trial, and that Robinson (and thus the Commonwealth) should be allowed to create an evidentiary record regarding adolescent brain development to support Robinson’s anticipated appellate advocacy to the SJC on that issue. The evidentiary hearing had to be rescheduled several times at Robinson’s request. The Court finally was able to hear the evidence on the courtroom closure issue on December 21, 2016. A further evidentiary hearing on the adolescent brain development issue is scheduled for February 16, 2017.
2. Facts Regarding Courtroom Closure 2.1. Evidentiary Record
The Court heard and received the following evidence regarding whether the public was barred from observing the selection of the jury in this case and, if so, regarding whether Mr. Robinson or his attorney waived any objection to such a courtroom closure.
The Court received and considered sworn affidavits by defendant Jason Robinson, Attorney Michael Doolin, Ms. Karen Pulido, and Mr. Robert John Tan-zerious Anderson, all of which were submitted by counsel for Mr. Robison.[5] It conducted an evidentiary hearing during which it heard oral testimony by Mr. Doolin, Ms. Pulido, and Mr. Anderson. The Commonwealth cross examined these witnesses, but did not seek to cross examine Robinson. The Commonwealth chose not to present any rebuttal evidence regarding whether the public was barred from the courtroom during juiy selection in this case.[6] The Commonwealth did submit copies of sworn affidavits by Attorneys Jonathan Shapiro and Steven Rappaport during the evidentiaiy hearing, and the Court has considered them;[7] these two affidavits were executed in 2012 and the originals were apparently submitted in support of a motion for a new trial filed by the defendant in Commonwealth v. Joseph Bennett, Suffolk Sup. Ct. 9784CR10114, regarding a case that was tried in 1998. Defendant did not object to the submission or consideration of those affidavits, did not seek leave to cross examine Mr. Shapiro or Mr. Rappaport, and did not seek leave to submit any rebuttal evidence. Finally, the Court also reviewed and considered the official transcript of the entire first day of trial, including the final trial conference as well as the empanelment process.
2.2. Findings of Fact
The Court makes the following findings based on this evidence and on reasonable inferences it has drawn from this evidence.
Mr. Doolin represented Mr. Robinson during the trial of this case and throughout the pretrial proceedings. Ms. Pulido is the mother of Robinson’s co-defendant, Tanzerious Anderson. She was present for every day of this trial. Finally, Mr. Robert Anderson is the brother of the co-defendant. He was present for almost every day of the trial, but had to miss at least one day to go to work.
The Court finds that all three of these witnesses were credible. It credits their testimony to the extent it is consistent with the following findings of fact.
This case was tried in the old federal courthouse in Post Office Square, Boston, Massachusetts.
The public was completely barred from the courtroom for the entire first day of the trial on March 19, 2002. As a result, no member of the public was allowed to observe any part of the final trial conference or any part of the jury empanelment process, both of which took place that day. Ms. Pulido and several other relatives of co-defendant Anderson were seated in the courtroom that morning before the final trial conference began. A court officer ordered them to leave, explaining that they were not allowed to be in the courtroom while the jury was being selected. Robert Anderson arrived a short time later. A court officer told him that he was not allowed inside the courtroom. Several of defendant Anderson’s family members (including not only his mother and brother, but also his sister Aliceado, his aunt Francine, and several other family members), a friend of the Anderson family named Earl Stafford, and several of the Defendant’s relatives (including his father and, more likely than not, his grandmother and aunt) tried to attend and observe the jury selection process butwere not allowed into the courtroom by the court officers. They all sat outside the courtroom on a bench the entire day but were never allowed inside, even though one or more, court officers must have known they were patiently waiting to be admitted. The courtroom remained completely closed to the public during the entire jury selection process.
The Court finds that the court officers’ orders that members of the public stay outside the courtroom during the first day of trial were not required because there was insufficient space inside the courtroom at the outset of jury selection, but instead was based on a mistaken belief that jury selection should be conducted in a closed session without the public present. When court officers first asked family members to leave the courtroom, or said they could not enter, the court officers did not say that they had to wait outside *35 the courtroom so that there would be space for prospective jurors. Nor did the court officers allow any family members to enter the court room as the jury selection process continued, some prospective jurors were excused, and as a result additional space for spectators became available inside the courtroom. There is no evidence that there was not enough space in the courtroom to accommodate Defendants’ family members and all prospective jurors at the same time. The trial transcript indicates that the judge planned to bring in an initial pool of thirty-five to forty prospective jurors. There is no evidence and no reason to believe that the courtroom could not accommodate a jury venire of that size plus Defendants’ friends and family members.
The trial judge made no findings or determination that there was not enough space in the courtroom to accommodate members of the public or that there was any other good reason to close the courtroom during jury empanelment. Nor did the trial judge ever order that the courtroom be closed during jury selection. There is no evidence that she was even aware that the public was kept out of the courtroom during the first day of trial.
Mr. Robinson was never asked to and did not agree that the public could be kept out of the courtroom while the jury was being selected. Robinson was not aware at the time, and did not learn until long after the trial was completed, that court officers had ordered relatives and friends of Robinson or co-defendant Anderson to stay out of the courtroom while the juiy was being selected.
Robinson’s lawyer, Mr. Doolin, was similarly unaware during the trial that the public had been barred from the courtroom duringjury selection in this case. He was also not aware that there was any routine practice in Suffolk Superior Court of barring the public from courtrooms when juries were being selected in criminal trials. When this case was tried, Doolin knew that from time to time when particularly large jury venires were brought to a courtroom space limitations made it difficult to fit all prospective jurors and still leave seats available for a defendant’s family members. He understood that in such cases the judge would sometimes accommodate a defendant’s family members and make sure they could be in the courtroom duringjury selection, and sometimes would not. The Court credits Doolin’s testimony on cross examination that if he knew that Defendants’ family members had been barred from the courtroom duringjury selection in this case he would have asked that they be admitted, but probably would not have made any other kind of objection. Doolin never made such a request in this case because he never knew that any family members were being barred from the courtroom on the first day of trial. At the time this case was tried, Doolin (like many other criminal defense lawyers, prosecutors, and trial judges in Massachusetts) did not realize that criminal defendants had a constitutional right to have the public attend and observe the jury selection process. As a result, during jury empanelment in this case, Doolin stayed focused on the jury selection process and paid no attention to who was seated in the courtroom and observing the proceedings.
The Court credits the unrebutted testimony by Attorney Shapiro that in 1998, when he tried two murder cases in Suffolk County, it was a regular practice in Suffolk Superior Court for courtrooms to be closed to the public duringjury selection. The Court also credits the unrebutted testimony of Attorney Rappaport that from 1978 to 1998 defendants’ family members were routinely excluded from the courtroom duringjury empanelment in Suffolk Superior Court.
The Court cannot and does not make any findings as to whether this Suffolk County practice of excluding the public duringjury selection continued after 1998, and if so for how long, because neither side presented any evidence on the topic. As discussed below, this is not a matter that is subject to judicial notice. In the absence of evidence on this factual issue, the Court cannot speculate as to how widespread this practice was in this counly after 1998.
In any case, the Court finds that Attorney Doolin was not aware when this case was tried in March 2002 that there was ever a routine practice of excluding the public from the courtroom during jury empanelment in all criminal trials in Suffolk Superior Court, or that such a practice was followed in this case.
3. Legal Background
3.1. Public Trial Right
“The right to a public trial guaranteed by the Sixth Amendment [to the United States Constitution] extends to the jury selection process, and it is a well-settled principle that a properly preserved violation of that right is structural error requiring reversal." Commonwealth v. Vargas, 475 Mass. 338, 357 (2016). “Where a meritorious claim of structural error is timely raised, the court presumes ‘prejudice, and reversal is automatic.’ ” Commonwealth v. Weaver, 474 Mass. 787, 814 (2016), quoting Commonwealth v. LaChance, 469 Mass. 854, 856 (2014), cert. denied, 136 S.Ct. 317 (2015). ‘The violation of the public trial right is structural error that ‘requires] automatic reversal without a showing of actual harm’ ” because it “necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.” LaChance, supra, at 863, quoting Washington v. Recuenco, 548 U.S. 212, 218-19 (2006), and Neder v. United States, 527 U.S. 1, 9 (1999). “A defendant asserting a claim of violation of the right to a public trial bears the burden of showing that the court room was closed to the public during the trial.” Commonwealth v. Cadet, 473 Mass. 173, 179 (2015).
It was well-established by the time this case was tried in 2002 that criminal defendants have a right to *36 a public trial that includes the right to have members of the public observe the selection of jury members. See, Press-Enterprise Co. v. Superior Court of California, Riverside County, 464 U.S. 501, 508-13 (1984) (“Press-Enterprise P) (public’s First Amendment right to view trial includes right to observe jury empanelment); Waller v. Georgia, 467 U.S. 39, 44-48 (1984) (defendants’ Sixth Amendment right to public trial includes right to be present during pre-trial proceedings). After Press-Enterprise I and Waller, it was “well settled that the Sixth Amendment right extends to jury voir dire." Presley v. Georgia, 558 U.S. 209, 213 (2010) (per curiam). The Supreme Court considered the point to be so well settled that when it finally held explicitly that a defendants’ Sixth Amendment right to a public trial includes the right to a public jury selection process it did so by summaiy disposition, without briefing or argument. Presley, supra. The Supreme Judicial Court anticipated Presley by expressly recognizing the same point well before this case was tried in 2002. See, Commonwealth v. Gordon, 422 Mass. 816, 823 (1996) (‘The guarantees of open public proceedings in criminal trials cover proceedings for the voir dire examination of potential jurors concerning their qualifications to serve.”) (citing Press-Enterprise I); see also, Commonwealth v. Martin, 417 Mass. 187, 193 n.8 (1994) (“the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public”) (quoting Waller, supra, at 46-47). Since the extension of a criminal defendant’s Sixth Amendment public trial right was “dictated by precedent,” and should have been “apparent to all reasonable jurists” at the time that Robinson was convicted, it applies with full force here even though this case was tried before Presley. See, Commonwealth v. Alebord, 467 Mass. 106, 112 n. 13 (2014), quoting Chaidez v. United States, 133 S.Ct. 1103, 1107 (2013).
Members of the public may not be barred from observing jury empanelment in a criminal trial unless the trial judge “make[s] a case-specific determination that closure [of the courtroom] is necessary.” Commonwealth v. Cohen (No. 1), 456 Mass. 94, 107 (2010). More specifically, “[a] full closure of a court room in a criminal trial constitutes a violation of a defendant’s Sixth Amendment right to a public trial unless the closure advances an ‘overriding interest’ that otherwise is likely to be prejudiced and is ‘no broader than necessary to protect that interest.’ ” Commonwealth v. Maldonado, 466 Mass. 742, 747 (2014), quoting Waller 467 U.S. at 48. This test is slightly modified for partial closures, where ‘it is necessary to show a ’’substantial reason" rather than an “overriding interest” to justify the closing.’ “ Id. at 747-48, quoting Cohen (No. 1), 456 Mass. at 111. In addition, ”[b]efore ordering any closure of a court room, whether full or partial, a judge ‘must consider reasonable alternatives to closing the proceeding, and . .. must make findings adequate to support the closure.’ “ Id. at 748, quoting Waller, supra. ’’Where a closure fails to satisfy these so-called Waller factors, the error is deemed ‘structural’ in that prejudice is presumed and the defendant is entitled to a new trial." Id.
The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.” Cohen (No. 1), 456 Mass. at 117, quoting Waller, 467 U.S. at 46. The same concerns apply to selecting a jury. Id. at 106-07. “Conducting jury selection in open court permits members of the public to observe [the] proceedings and [thereby] promotes fairness in the judicial system.” Commonwealth v. Lavoie, 464 Mass. 83, 86 (2013). After all, “[j]uiy selection is the primary means by which a court may enforce a defendant’s right to be tried by a jury free from ethnic, racial, or political prejudice, ... or predisposition about the defendant’s culpability.” (Internal citations omitted.) Gomez v. United States, 490 U.S. 858, 873 (1989). Even where individual juror questioning is conducted at-sidebar, and thus out of hearing of the public, doing so in open court still “furthers the values that the public trial right is designed to protect” because it “permits members of the public to observe the judge [and] prospective jurors.” Cohen (No. 1), supra. The ability of a member of the public to ask for and later review a transcript of jury empanelment is not a constitutionally sufficient alternative to letting the public watch the proceedings themselves. Id. at 119. If the public is unlawfully kept out of a courtroom during jury selection, “releasing the transcripts of empanelment . . . will not appropriately remedy the violation.” Id. Instead, a criminal defendant convicted in such a case “is entitled to a new trial.” Id.
In sum, “[b]ecause we place such value on the right to public trial and because it is virtually impossible to demonstrate concrete harm flowing from a violation of that right, a violation relieves the defendant of the need to show prejudice in order to obtain a new trial.” Commonwealth v. Downey, 78 Mass.App.Ct. 224, 229 (2010).
3.2. Waivers of Public Trial Right
Even though violation of a defendant’s right to a public trial is a structural error, “the right to a public trial can be waived in some circumstances.” Weaver, 474 Mass. at 814. A “structural right” may be waived in the same manner as any other constitutional right. Commonwealth v. Jackson, 471 Mass. 262, 268 (2015); Cohen (No. 1), 456 Mass. at 105-06. A defendant may himself make a substantive waiver of a fundamental constitutional right if he does so knowingly and voluntarily. Commonwealth v. Deeran, 397 Mass. 136, 141 (1986). In addition, defense counsel may make a procedural waiver of such a right by not making a timely objection. Id. at 141-42.
*37 Counsel will therefore procedurally waive a defendant’s public trial rights by not asserting them at the right time. La Chance, 469 Mass. at 857; Commonwealth v. Morganti, 467 Mass. 96, 101-02 (2014). “A procedural waiver may occur [even] where the failure to object is inadvertent.” Commonwealth v. Wall, 469 Mass. 652, 672-73 (2014). “Such waiver need not be consented to by the defendant,” Vargas, 475 Mass. at 357, because “[t]he procedural waiver of a claim, as opposed to a defendant’s express or implied consent to the loss of a substantive constitutional right, need not be ‘knowing’ and ‘intelligent,’ ” Deeran, supra, at 142.
There are three ways that defense counsel can procedurally waive the defendant’s right to a public jury selection process. First, if the lawyer knew that the voir dire process was closed to the public, but did not object, that constitutes a procedural waiver. See, Vargas, 475 Mass. at 357 & n.27; Commonwealth v. Penn, 472 Mass. 610, 622-23 (2015); Morganti, 467 Mass. at 97 & 102; Alebord, 467 Mass. at 113; Commonwealth v. Dyer, 460 Mass. 728, 734 & 736 (2011); Commonwealth v. Horton, 434 Mass. 823, 832 (2001). That is true even if defense counsel did not object because he or she “did not understand that the public had a right to be present during the juiy empanelment phase of the trial proceedings.” Weaver, 474 Mass. at 814-15.
Second, if defense counsel knew that the staff in a certain courthouse or the trial judge had a routine practice of always excluding the public from the courtroom during jury selection, and the lawyer made no effort to keep that from happening in a particular case, that will also procedurally waive the public trial right. See, Commonwealth v. Lang, 473 Mass. 1, 3 & 9 (2015) (defense counsel aware of general practice in Suffolk County of excluding public during juiy empanelment); Commonwealth v. Fritz, 472 Mass. 341, 346 (2015) (same); LaChance, 469 Mass. at 855-58 (defense counsel “believed that the court room was closed during jury empanelment, as was the practice in the Superior Court in Middlesex County at the time”); Lavoie, 464 Mass. at 85 & 89 (same). Once again, this will constitute waiver even if counsel “was not aware at the time of trial that the Sixth Amendment right to a public trial extended to jury empanelment.” LaChance, supra, at 856.
Third, if trial counsel was unaware of a courtroom closure during jury selection, had no reason to believe that the public was being excluded, and thus had no opportunity to object at trial, the issue will nonetheless be procedurally waived if it is not raised in the defendant’s first motion for a new trial. See, Commonwealth v. Celester, 473 Mass. 553, 578 (2016); Commonwealth v. Jackson, 471 Mass. 262, 268-69 (2015), cert. denied, 136 S.Ct. 1158 (2016); Wall, 469 Mass. at 673. This is because, under Mass.R.Crim.P. 30(c)(2), “defendant must raise all available grounds for relief in first rule 30 motion [for a new trial] or ‘those claims are lost.’ ” See generally, Commonwealth v. Balliro, 437 Mass. 163, 166 (2002), quoting Deeran, 397 Mass. at 139. The Reporter’s Notes state that Rule 30(c)(2) “is not intended to foreclose from future consideration grounds [that] were not known and could not have been found out with the exercise of due diligence.” Wall, Celester, and Jackson stand for the proposition that if a defendant first raises his claim of unlawful courtroom closure in a second or subsequent motion for a new trial, and the defendant cannot show that he could not reasonably have presented the same evidence and argument in his first motion for a new trial, then the claim has been procedurally waived.
Where none of these three circumstances is present — because the defendant did not know that the public was being kept out of the courtroom during juiy selection, defense counsel was not aware that there was a routine practice of doing so, and defendant raised the issue in his first motion for a new trial — then the unlawful exclusion of the public from the courtroom during jury selection constitutes an unwaived structural error and the defendant is entitled to a new trial without showing that he suffered any prejudice from the courtroom closure. See Cohen (No. 1), 456 Mass. at 117-19 & 100-01; Downey, 78 Mass.App.Ct. at 232.
On the other hand, if counsel has procedurally waived a defendant’s right to a public trial, “the presumption of prejudice that would otherwise apply to a preserved claim of structural error does not apply.” Celester, 473 Mass. at 579, quoting LaChance, 469 Mass. at 856. Thus, if a defendant can show that the public was unlawfully excluded from the courtroom during a critical part of the trial, but that claim of error was procedurally waived, the defendant generally is not entitled to a new trial unless he can show that the closure caused “a substantial risk of a miscarriage of justice.” LaChance, supra, at 857; Lavoie, 464 Mass. at 89. “This is a heavy burden.” Commonwealth v. Kilburn, 438 Mass. 356, 360 (2003). This same heightened standard would apply even if the defendant could show that his lawyer’s failure to object to the courtroom closure constituted ineffective assistance of counsel. Weaver, 474 Mass. at 814-15; LaChance at 858.
Since Robinson was convicted of first degree murder and the SJC stayed his direct appeal, it is unclear whether the Court would have to apply this “substantial risk” standard or a “substantial likelihood of a miscarriage of justice” standard if it were to find that Robinson waived his public trial rights. The more generous “substantial likelihood” standard applies to unpreserved claims of error when the SJC reviews a conviction for a capital crime under G.L.c. 278, §33E.[8] Commonwealth v. Vaughn, 471 Mass. 398, 411 (2015). Where a defendant convicted of first degree murder moves for a new trial based on a courtroom closure, *38 but has procedurally waived his public trial rights, which standard applies to appellate review of the new trial motion depends on whether that review is consolidated with the defendant’s direct appeal of his conviction. The substantial likelihood standard applies in consolidated appeals. Penn, 472 Mass. at 623. In contrast, where the SJC reviews a new trial motion in such a case after it has already decided the direct appeal, it applies the substantial risk standard. Commonwealth v. Hardy, 464 Mass. 660, 662-63 & n.3 (2012). Arguably, therefore, the standard that applies when the Superior Court decides a new trial motion after defendant is convicted of a capital crime may depend on whether the direct appeal is still pending and thus will likely be consolidated with an appeal from the new trial ruling. Then again, it may not matter which standard applies in the Superior Court, because the metaphysical distinction between the two standards may make no practical difference. See, Commonwealth v. Lennon, 399 Mass. 443, 448 n.6 (1987) (“Some of our opinions have not worried over the distinction because it did not matter and have used either the word ‘likelihood’ or ‘risk’ when the other word was the traditionally correct one”). But the issue is irrelevant here because Robinson did not waive his public trial rights, as discussed below.
4. Analysis and Rulings of Law
Mr. Robinson has “established that the juiy selection procedures used in this case violated his Sixth Amendment right to a public trial” and “that he did not waive this right.” Cf. Cohen (No. 1), 456 Mass. at 118. By law, the Court must therefore grant Robinson’s motion for a new trial and vacate his prior convictions in this case. Id. at 117-19 & 100-01 (reversing convictions for attempted extortion and other crimes); Downey, 78 Mass.App.Ct. at 229-32 (reversing conviction for second degree murder).
The unjustified closure of the courtroom on the first day of trial was unconstitutional. See, Cohen (No. 1), 456 Mass. at 106-16. The Court has found that the public was barred from the courtroom for the entire time that the jury was being selected in this case. The courtroom was completely closed to the public during that time even though the trial judge made no findings that excluding the public was necessary to protect some more important interest, that the courtroom closure was no broader than necessary to protect that other interest, and there were no reasonable alternatives that would protect that other interest without infringing on Mr. Robinson’s constitutional right to a new trial. In the absence of such findings, the complete closure of the courtroom was improper. Id.
Mr. Robinson never waived his public trial rights. Robinson himself never consented to the closure of the courtroom. Indeed he could not have knowingly and intelligently waived his right to a public trial because he had had no idea until after the trial that the public was barred from the courtroom during jury selection. Cf. Commonwealth v. Mawredakis, 430 Mass. 848, 855-60 (2000) (defendant cannot make knowing and intelligent waiver of Miranda right to assistance of counsel if not informed that lawyer tried to contact him and render assistance).
Nor did Robinson’s lawyer procedurally waive Robinson’s public trial rights procedurally by falling to object during the trial. There was no procedural waiver in the circumstances of this case because Attorney Doolin did not know that anyone was barred from the courtroom during jury selection and was not aware that there was any routine practice of doing so. Contrast, e.g., Vargas, 475 Mass. at 357 & n.27 (waiver where counsel knew public was barred from courtroom during voir dire); Lang, 473 Mass. at 9 (waiver where counsel knew of general practice of closing courtroom). Although Attorney Doolin knew that courtrooms were sometimes closed to the public “to accommodate large numbers of jurors,” that does “not itself support a finding that he was also aware” or should have realized that the courtroom was “closed throughout the empanelment process” in this case. See, Cohen (No. 1), 456 Mass. at 118. The Commonwealth asserts that Robinson’s trial counsel “must have known . . . that it was common practice for courtrooms throughout Massachusetts to be closed during jury selection in 2002.” But it failed to support that argument with any evidence. It would not be appropriate for the Court to take judicial notice of purported past practices in Suffolk Superior Court regarding admission of the public to courtrooms during jury selection. Cf. Cadet, 473 Mass. at 180 (affirming denial of request “to take judicial notice of past practices of other judges” regarding courtroom closure) . Such past practices are not amenable to judicial notice because they are “not a matter of common knowledge” and cannot be verified in “unimpeachable records that would unquestionably establish these alleged facts.” Bogertman v. Attorney General, 474 Mass. 607, 616 (2016). Furthermore, the Commonwealth’s insistence that Attorney Doolin must have known that courtrooms were regularly closed during juiy selection in 2002 is hard to square with its equally strong insistence that Mr. Robinson has not met his burden of proving that the courtroom was in fact closed to the public in this case. Since “(m)atters are judicially noticed only when they are indisputably true,” practices that are sometimes but not always followed are not susceptible to judicial notice. Murphy v. Contributory Retirement Appeal Bd., 463 Mass. 333, 351 (2012) (declining to “take judicial notice that the opening and reading of mail by a judge in chambers is a judicial duty because, although it may be for some judges, it may not be for others”), quoting Nantucket v. Beinecke, 379 Mass. 345, 352 (1979). In any case, even if courtrooms were always closed during jury selection in Suffolk'Superior Court in 2002, there still would be no procedural waiver in this case because Robinson’s counsel was not aware *39 that was routinely done. See, Cohen (No. 1), 456 Mass. at 114 & 117-18 (no waiver even though motion judge found, based on testimony by court officers, that there was an “established court policy” of excluding public during jury selection).
Furthermore, Robinson did not procedurally waive his public trial rights by failing to challenge a courtroom closure in his first new trial motion. Contrast Wall, 469 Mass. at 673. Robinson’s direct appeal of his conviction has been stayed pending resolution of his motion for a new trial and Robinson’s appellate counsel raised this pubic trial issue in Robinson’s first motion for a new trial. The Court recognizes that Robinson waited an unusually long time after he was convicted before seeking a new trial. But the Commonwealth does not argue that Robinson’s thirteen-year delay in filing his motion for a new trial constitutes a waiver of his right to do so or a procedural waiver of his constitutional claim regarding the denial of his right to a public trial. “(R]ule 30(b) provides that a trial judge may grant a defendant’s post-conviction motion for a new trial ‘at any time.’ ” Commonwealth v. Francis, 411 Mass. 579, 585 (1992), quoting Mass.RCrim.P. 30(b). As a result, under Massachusetts law “a defendant’s delay in bringing a rule 30 motion does not in itself constitute waiver.” Commonwealth v. Azar, 435 Mass. 675, 690 (2002) (no waiver where new trial motion was filed more than nine years after trial), quoting Francis, supra, at 586 (no waiver despite twenty-year delay in moving for new trial). “Nor has the Commonwealth argued that the delay was deliberate or strategic.” Commonwealth v. Baran, 74 Mass.App.Ct. 256, 302 n.55 (2009) (no waiver even though new trial motion was filed eighteen years after direct appeal was decided). And with good reason. Even assuming that a defendant’s intentional delay in seeking a new trial for strategic reasons would constitute waiver of the right to seek a new trial, “entirely speculative” allegations of intentional delay could not be credited “without factual support in the record.” Francis, supra, at 585-86. The Commonwealth presented no evidence that Robinson deliberately delayed moving for a new trial for strategic reasons, which is presumably why it does not claim that Robinson waived his right to seek a new trial by waiting until thirteen years after his conviction to file his rule 30 motion.
The Commonwealth instead asserts that a violation of a criminal defendant’s right to a public trial during jury empanelment is waived if no objection is made at the time even if the defendant and his counsel did not know the courtroom was closed, counsel was not aware of any general practice of barring the public from the courtroom during jury selection, and defendant raises the issue in his first motion for a new trial and before his direct appeal is heard and decided.
This argument is incorrect and is based on a misreading of applicable precedent. Neither Jackson nor Wall hold — as the Commonwealth argues in its supplemental opposition — "that a courtroom-closure is waived whenever the defense fails to preserve the issue of trial, even if neither the defendant nor his counsel was aware of the closure at the time." Instead, the SJC held that the defendants in those cases waived their public trial claims by not objecting to the courtroom closure at trial and then, in addition, by failing to raise the claim of error in their first motion for a new trial. Jackson, 471 Mass. at 269 (finding waiver where issue “was not raised in [defendant’s] first motion for a new trial”); Wall, 469 Mass. at 673 (finding waiver “where . . . defendant failed to raise the claim in his first motion for a new trial”); accord, Celester, 473 Mass. at 578 (affirming ruling “that the defendant’s failure to raise this issue in his first motion for a new trial constituted waiver”).
So long as a criminal defendant challenges a courtroom closure in his first post-conviction motion for a new trial, a failure to object during the trial itself cannot constitute a procedural waiver where the defendant and his counsel did not know that the public was being kept out of the courtroom and were not aware of any routine practice or established policy of closing the courtroom. See, Cohen (No. 1), 456 Mass. at 114 & 118. The SJC’s decision in Cohen (No. 1) remains good law and was not abrogated, either explicitly or by implication, by Jackson or Wall.
If the Commonwealth’s argument in this case were correct — and a criminal defendant’s failure to object at trial to closure of the courtroom would waive his public trial rights, and thereby require him to prove prejudice before obtaining a new trial, even if he did not know and had no reason to know that members of the public were ordered out of the courtroom while the jury was being selected — then the constitutional right to have the public attend and observe the jury selection process would be stripped of any practical meaning. As noted above, “it is 'virtually impossible to demonstrate concrete harm flowing from a violation of a criminal defendant’s right to a public trial. Downey, 78 Mass.App.Ct. at 229. Indeed, the fact that ’’the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance" is the very reason why Sixth Amendment public trial violations constitute structural error for which “the defendant should not be required to prove specific prejudice in order to obtain relief.” Waller, 467 U.S. at 49 & n.9 accord Cohen (No. 1), 456 Mass. at 105 & n.15. “To require the defendant to undertake the well-nigh impossible task of proving prejudice” in every case in which a courtroom was closed to the public “would render the right to a public trial illusory and beyond appellate review on that basis.” People v. Jones, 47 N.Y.2d 409, 417 (1979); accord, e.g., State v. Schmit, 273 Minn. 78, 88 (1966).
The Commonwealth argues in the alternative that Defendant procedurally waived his right to a public *40 trial because he did not prove that his trial counsel would have objected if he had known that the public was barred from the courtroom during jury empanelment. That is also incorrect. If there had been a procedural waiver of Robinson’s public trial rights, and as a result Robinson had the burden of proving he had received ineffective assistance of counsel, then Mr. Doolin’s concession that he probably would not have objected if he knew the courtroom had been closed would be relevant to the question of whether his conduct fell below “that of an ‘ordinary fallible lawyer’ ... at the time of the alleged professional negligence.” Alebord, 467 Mass. at 114, quoting Commonwealth v. Drew, 447 Mass. 635, 641 (2006), cert. denied, 550 U.S. 943 (2007); accord Fritz, 472 Mass. at 346-47; Morganti, 467 Mass. at 104. But whether trial counsel would have objected is irrelevant where, as in this case, there was no procedural waiver of Robinson’s constitutional right to have the public present during jury selection. See, Cohen (No. 1), 456 Mass. at 117-19.
For all of these reasons the closure of the courtroom during the jury selection process in this case was unconstitutional, there has been no waiver of Robinson’s constitutional right to a public trial, and therefore by law the Court must grant Robinson’s request for a new trial. Since there is no need for the Court to reach the other issues raised by Robinson in support of his new trial motion, the Court will cancel the further evidentiary hearing that had been scheduled in this case.
ORDER
Defendant’s motion for a new trial is ALLOWED. Defendants’ prior convictions in this case are hereby vacated. The evidentiary hearing previously scheduled for February 16, 2017, is hereby cancelled.

 The case of Commonwealth v. Jason Robinson was docketed in the Suffolk Superior Court as number 0084CR10975 and in the Supreme Judicial Court as number SJC-09265. The companion case of Commonwealth v. Tanzerius Anderson was docketed in the Suffolk Superior Court as number 0084CR10777.
A judge may take judicial notice of its own records and “of the records of other courts” in the same or a related action. Commonwealth v. Gonzalez, 462 Mass. 459, 468 n.17 (2012) (taking notice of document filed in related action), quoting Jarosz v. Palmer, 436 Mass. 526, 530 (2002); accord, In re McIntire, 458 Mass. 257, 263 n.8 (2010) (taking notice of docket entries from related proceedings); In re Andrews, 368 Mass. 468, 476 (1975) (taking judicial notice of transcript from evidentiaxy hearing).

 The transcript actually says that the pre-trial conference began at 10:10 a.m., that the proceedings were recessed at 9:26 a.m., and that court reconvened at 10:44 a.m. At least one of these times must be incorrect; the court could not have recessed forty-four minutes before the matter was first called to order.
The most sensible way to construe the transcript is as showing that the pre-trial conference began at 10:10 a. m. and ended at 10:26, not 9:26. Robinson and Anderson both needed to be transported from the jail to the courthouse; the dockets confirm that both defendants had been held without bail. It would therefore make sense that Judge Rouse could not start the pretrial conference until 10:10 a.m. In contrast, it would not make sense that she finished the conference at 9:26 a.m. but had to wait until 10:44 a.m. for a pool of prospective jurors to be brought to her courtroom. Since this was a first degree murder case with two defendants, and was starting on a Tuesday, it is quite likely that Judge Rouse was first in line to receive prospective jurors from the Suffolk Superior Court jury pool that day.

 Nile trial transcript states that Judge Rouse intended to begin empanelment with a venire of thirty-five to forty potential jurors. The record does not specify how large the first venire actually was. The Court infers and therefore finds that the actual venire size matched the expectation stated by the trial judge a few minutes before the venire was brought to the courtroom.

 The jury found that co-defendant Anderson was guilty of murder in the first degree on theories of extreme atrocity or cruelty (as a principal) and felony-murder (as a principal and a joint venturer), armed robbery (as a principal and joint venture), and illegal possession of a firearm. On appeal, the Supreme Judicial Court affirmed Anderson’s convictions and declined to reduce the murder conviction to a lesser charge. See, Commonwealth v. Anderson, 445 Mass. 195, 196 (2005).

 A judge may decide a motion for a new trial based on “the affidavits submitted in support of the defendant’s motion” together with oral testimony at an evidentiary hearing. Commonwealth v. Sylvain, 473 Mass. 832, 838 (2016).

 Contrast Commonwealth v. Buckman, 461 Mass. 24, 28 (2011) (although defendant presented evidence that “it was uniform practice for the public to be excluded from jury selection” in Norfolk Superior Court, and that courtroom was in fact closed to the public in this case, “the Commonwealth presented” and the motion judge credited “opposing testimony from an assistant district attorney, prosecution witnesses who testified at the trial, and the court officers who assisted in administration of the trial”); Commonwealth v. Cruz, 90 Mass.App.Ct. 60, 65, rev. denied, 476 Mass. 1101 (2016) (although defendant presented affidavits and oral testimony by relatives and trial counsel that courtroom was closed during jury empanelment, the Commonwealth presented and the motion judge credited contrary testimony by “the trial judge, the prosecutor, an assistant trial court clerk, and a trial court officer”).

 See Mass.R.Crim.P. 30(c)(3) (“parties opposing a motion may file and serve affidavits where appropriate in support of their respective positions”).

 At first blush, there may be no obvious difference between the two standards. See, Commonwealth v. Lennon, 399 Mass. 443, 448 n.6 (1987) (these standards use “words which suggest that the tests may be identical”). Someone who discerns a difference might reasonably expect that it is more difficult to prove that a possible outcome is a “likelihood” (i.e., a “thing that is likely, a probability”) than a mere “risk” (i.e., “the possibility of loss, injury or other adverse circumstance”). See New Shorter Oxford English Dictionary 1588, 2609 (1993); accord American Heritage Dictionary 731, 1065 (2d College Ed. 1985). But the SJC has held that the substantial likelihood standard is “more forgiving to a defendant than the substantial risk standard,” Commonwealth v. Smith, 460 Mass. 318, 321 n.2 (2011), or, in other words, that the substantial risk standard “is a harder burden for the defendant to satisfy,” Commonwealth v. Amirault, 424 Mass. 618, 646 n.20 (1997).